FREIGHT DRIVERS AND HELPERS LOCAL UNION 557, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Plaintiff

v.

QUINN FREIGHT LINES, INC., Defendant.

Civ. A. No. 60–500–S.

United States District Court
D. Massachusetts.

June 21, 1961.

Marshall A. Levin, Jacob J. Edelman, Baltimore, Md., Albert L. Goldman, Robert Weihrauch, Grant, Angoff, Goldman & Manning, Boston, Mass., for plaintiff.

James J. Doherty, Baltimore, Md., for defendant.

Allan A. Tepper, Robert M. Segal, Segal & Flamm, Boston, for third party defendant Local 653, International Brotherhood of Teamsters.

SWEENEY, Chief Judge.

This is an action under Section 301 (a) of the Labor Management Relations Act, 29 U.S.C.A. § 185(a), for specific performance of the arbitration clause of the collective bargaining agreement between these parties. There are before me now a plaintiff's motion for summary judgment, a defendant's motion to dismiss for lack of jurisdiction, and a defendant's motion for leave to file an answer to the complaint.

The complaint, which was originally filed in the U. S. District Court for the District of Maryland, and transferred to this Court by stipulation of the parties, alleges that the plaintiff Union and the defendant Quinn[1] entered into a collective bargaining agreement effective August 31, 1958, and expiring August 31, 1961. At some time within this period Quinn established a new run from Brockton, Massachusetts, to Baltimore, Maryland, which, allegedly, should have been negotiated with the Union. Quinn, however, had the run manned and performed by members of Local 653, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, of Brockton, Massachusetts, with whom Quinn also had a contract, and refused to negotiate the operation of the new run pursuant to its contract with the plaintiff. The latter then requested that the matter be processed in accordance with the grievance procedure, Article 10, of the agreement in suit, and Quinn again refused.

The defendant's motion for leave to file an answer is denied. The parties agreed before Judge Thompson in Baltimore that the case was ready for final decision on the complaint, the stipulated facts, and the motion to dismiss. Nothing has changed since then.

The questions presented by the motions to dismiss and for summary judgment are identical—whether the dispute is arbitrable and whether the court has jurisdiction of the subject matter.

The defendant apparently does not contest that this controversy is arbitrable and I find that it is. The general rule has been stated to be that a grievance is arbitrable where it is specifically contracted to be arbitrable or generally where the contract expresses a broad arbitration policy; but controversies are not arbitrable where the controversy in question is specifically or impliedly excluded and where the grievance concerns violation of a "no strike clause". Lodge No. 12, Dist. No. 37, International Association of Machinists v. Cameron Iron Works, 5 Cir., 1958, 257 F.2d 467, 471.

In this case the arbitration clause is even broader and more inclusive than the usual so-called general arbitration clause. It provides for arbitration of "any disagreement, dispute, complaint, or grievance concerning any matter pertaining to the relations between Union members and operators," and it clearly includes the grievance here asserted.

The principal argument advanced by the defendant in support of the motion

1. The agreement was negotiated and signed on behalf of Quinn by the Labor Relations Council of Baltimore, Inc., an association of trucking company employers. The Council had also been named a party defendant, but the action against it was dismissed by consent.

to dismiss and against the granting of relief to the plaintiff is that this is a work assignment dispute within the meaning of Sections 8(b) (4) (D) and 10(k) of the Act, 29 U.S.C.A. §§ 158(b) (4) (D) and 160(k), and is, therefore, within the exclusive jurisdiction of the National Labor Relations Board. Since the Board's exclusive jurisdiction over activities which are prohibited or protected by the Act preempts state courts from deciding such disputes, San Diego Building Trades Council v. Garmon, 1959, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed. 2d 775, the same restriction should apply to federal courts and, by implication, to arbitrators.

 But Congress granted to the district courts jurisdiction to determine suits for violation of contracts, and the Supreme Court in Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 established not only that the court has the power under Section 301 to decree specific performance of agreements to arbitrate, but that this power is to be exercised broadly and liberally. Therefore and because the Board's jurisdiction is limited to the effectuation of the purposes of the Act,[2] and is not concerned with policing and enforcing labor contracts, the power to decree arbitration has been held to exist even where the act complained of constitutes both an unfair labor practice and a violation of the agreement. United Steelworkers of America (AFL-CIO), Local Union No. 4264 v. New Park Mining Co., 10 Cir., 1959, 273 F.2d 352; Lodge No. 12, Dist. No. 37, International Association of Machinists v. Cameron Iron Works, supra; Reed v. Fawick Airflex Co., D.C.Ohio 1949, 86 F.Supp. 822.

The defendant argues against the application of these principles to this case on the ground that in this case the real dispute is between the two unions, and that an arbitrator's award in favor of this plaintiff may result in forcing it to break its contract with Local 653. But this argument ignores the fact that the parties by contract agreed[3] to negotiate individual agreements covering any operations in which members of the plaintiff union were not employed, and to arbitrate any differences. The union should not be forced to abandon its rights under the contract simply because the Board may also have jurisdiction of a portion of this dispute.

The motion to dismiss is denied. The plaintiff's motion for summary judgment is allowed as prayed for.

---

2. "It is declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." 29 U.S.C.A. § 151.

