In the Matter of JAMES B. CAREY, as President of International Union of Electrical, Radio and Machine Workers, A. F. L.-C. I. O., Appellant-Respondent, *v.* WESTINGHOUSE ELECTRIC CORPORATION, Respondent-Appellant.

First Department, November 21, 1961.

*Isadore Katz* of counsel (*Lieberman, Katz & Aronson* and *Benjamin Sigal*, attorneys), for appellant-respondent.

*John F. Hunt, Jr.*, of counsel (*John D. Calhoun* with him on the brief; *Cravath, Swaine & Moore*, attorneys), for respondent-appellant.

STEUER, J. Petitioner, a labor union, instituted this proceeding to compel respondent to arbitrate four grievances. As to one of these, the disposition of Special Term has been acquiesced in by the parties and is not before the court. Special Term directed arbitration on two of the grievances and dismissed the petition as to the other. Both parties appeal from the decision insofar as it is adverse to their contentions.

The first grievance, numbered 2079-A, arose in the company's East Pittsburgh plant. For many years the company had an incentive pay program in connection with which it established time values for various operations. From time to time these time values were changed in accordance with changing conditions of operation. The collective bargaining agreement contains the provision: "Management recognizes that time values should be revised as soon as possible after the changes have been completed." (Agreement, § VIII, 8 E [2] [c].) In October, 1957, a major change in the time value of a molding operation was put into effect. The union claims that the change embraced variances which had accumulated over a period of several

years. The union protests the change on the ground it was not timely made in accordance with the agreement. Special Term ordered arbitration.

The equivocal wording of the phrase relied on, not constituting an agreement, is understood when another clause of the bargaining agreement is considered:

"Notwithstanding any other provisions of this Agreement, no arbitrator shall  *  *  *  be authorized to:

*  *  *

" (2) Establish or modify any wage or salary rate  *  *  * or any time value under the incentive system." (§ XIV-A, D.)

When both these provisions are taken into consideration the contractual intent stands revealed. This is the primary guide to the solution of the problem presented (*Steelworkers* v. *Warrior & Gulf Co.*, 363 U. S. 574). The intent is that incentive pay, like all other rates of wage, being the result of completed negotiations, is not subject to further adjustment by arbitration. While the company expressed a policy of implementing the time values to operating changes as soon as possible, there is no undertaking in that regard. Actually the delay favored the workers. Improvement in processes reduced time values. But until the change was reflected in the reduced time value the worker enjoyed the rate still in effect. When the change was reflected in the incentive pay, the demand to arbitrate followed promptly. But the contract leaves nothing for the arbitrator to determine. What the union really wants determined is that the change in time value — reflecting as it does several minor changes of long standing — should not be allowed to stand because of the delay in effectuating it. But such a decree the arbitrator cannot render.

There is a school of thought, to which Special Term subscribed, that prior to the award the court should not concern itself with what the arbitrator may decide but that this should be made to await an application to confirm the award. For example, here, if the arbitrator does change the time value, his award may be vacated on such a motion. We believe that whether court action should precede or succeed the arbitrator's award is not subject to unbending rule but presents a question requiring consideration of the nature of the objection and the scheme of the agreement providing for arbitration. The agreement here provides (§ XIV-A, C [5]) that if either party notifies the American Arbitration Association (which is the body designated to implement arbitrations under the agree-

ment) that no arbitrable issue is raised, the said association cannot proceed to process the arbitration until the court has finally determined that there is an arbitrable issue. This provision shows an intent that such questions should be determined before, not after, arbitration has been had. Evidently the parties regarded the saving in time and energy as more important to them than the therapeutic value which the processing of even frivolous claims may have (*Steelworkers* v. *American Mfg. Co.*, 363 U. S. 564, 568). Here no basis can be found for vitiating the expressed and implemented intent of the parties. As the arbitration cannot result in an effectual award, the demand to arbitrate must be denied.

The second grievance is numbered 1971-C. It arose in the company's plant at Mansfield, Ohio. An employee suffered a protracted illness. After she was away from the plant for a year the company dropped her name from its rolls, thereby effectuating a discharge. About a month later she applied for a position and was given a physical examination by a company doctor who reported that her condition was not such as to warrant her being hired. An examination by her own physician resulted in an opposite opinion. Some months later the union filed this grievance. In the interim the company doctor who had made the examination died.

There is no doubt that a discharge is subject to arbitration (*Matter of Carey* v. *Westinghouse*, 6 A D 2d 582, affd. 6 N Y 2d 934). Nor can there be any dispute but that the grounds and method of discharge have never been assented to by the union. So, on its face, the demand for arbitration is unexceptionable. The company raises two objections. The first is that the union does not really object to the discharge but only to the failure to rehire, which is evidenced by the fact that no protest followed the discharge but only eventuated when the former employee's application for a position was rejected. The failure to hire any individual is neither a grievance nor arbitrable. The second objection is that the demand is unavailable because of laches, and the delay is claimed to be prejudicial due to the death of the medical witness.

These objections are mutually contradictory. If the arbitration is confined to the discharge, the failure to rehire and the reasons therefore do not constitute issues. The union argues that in any event laches is a matter for the arbitrator to consider. Undoubtedly this would be so if the laches was a failure to make a timely demand for performance of the contract (*Matter of Lipman* [*Haeuser Shellac Co.*], 289 N. Y. 76).

Where the laches is asserted to bar the exercise of the right to arbitrate, the question is not so clear. The court must always decide whether there is an agreement to arbitrate and, ordinarily, this necessity would include a determination of whether the agreement has terminated, either by its terms or the interpretation put upon it by the parties. But where the agreement is in effect, the disposition of whether the particular claim has been shown to be abandoned by the failure to assert it is a matter of defense for the arbitrator to decide.

The other objection is based upon the presumption that the arbitrator will not pass upon the question of discharge but will adjudicate on the question of failure to rehire. This is an assumption that the court may not indulge in. We agree with Special Term that this grievance should proceed to arbitration.

The remaining grievance is 2286-G and arose in the Baltimore plant. It appears that the company has three classes of employees. One class, composed of clerical help, guards, etc., are not members of either the petitioner union or the Federation of Westinghouse Independent Salaried Unions (herein Federation) and are not involved in any way on this application. Of the others, some are engaged in production and maintenance work on a time basis and are members of petitioner union. The balance are engaged in experimental work, are salaried, and are members of Federation. It should be observed that the distinction between production and maintenance on the one hand and experimental work on the other is not so much a distinction in operative procedures as it is in the purpose for which the work is performed. Generally speaking, while in many instances the same operation is performed at the machines, the experimental work is deemed finer and the designation of an employee to the salaried division is described in the papers as a promotion.

The grievance stated is that certain employees doing certain work at Wilkens Avenue, Baltimore (the site of the experimental work) are actually doing production work and the petitioner union should be recognized as the bargaining agent for these workers. Special Term decided that as the grievance embraced all workers so engaged, including those who were in the salaried class at the time the differentiation was made and the workers having selected the respective unions to represent them, the matter was not arbitrable. This conclusion was influenced by the fact the respective unions had been selected under the auspices of the National Labor Relations Board (herein NLRB) and that the question was exclusively deter-

minable by the NLRB. While we reach a similar conclusion, namely, that the issue is not arbitrable, we do not arrive at it in precisely the same way.

We start with the proposition that a breach of contract does not become *ipso facto* incapable of arbitration because it also happens to be an unfair labor practice (*Lodge No. 12* v. *Cameron Iron Works,* 257 F. 2d 467 [C. C. A. 5th]). In other words, the field is not pre-empted. On the other hand, where the NLRB has assumed jurisdiction the orderly process of justice demands that the matter should not be submitted to another forum, even though a breach of contract may be involved (*Matter of Amperex Electronic Corp.* [*Rugen*], 284 App. Div. 808). The dividing line between these extremes would seem to be best fixed at that point where the peculiar expertise of the NLRB has found expression. Undoubtedly one of the fields in which it has so found expression is that of representation. The claims of conflicting unions representing different classifications of employees within one company may be said to be its special province. And there are, of course, other fields. When it is sought to invade one of those fields it is immaterial whether the interference is contemporaneous with the board's decision (as in *Matter of Amperex, supra*) or seeks to avoid it by a subsequent application to arbitrate (*Matter of Apex Lbr.* [*Teamsters Local*], 15 Misc 2d 15) or seeks to anticipate it, as here. That is not to say that where the question of contract breach is direct and the question of representation is peripheral, arbitration may not be had. It may. (*Freight Drivers* v. *Quinn Freight Lines,* 195 F. Supp. 180, U. S. Dist. Ct., Mass.)

The exact position of the issue, vis-a-vis the existing framework of the union representations within the company, must be the deciding factor in a determination of whether the issue is the exclusive province of the NLRB or whether it may also be arbitrable. From the facts revealed on this application, including the extent of the demand for arbitration which clearly encroaches, we conclude that orderly process is best served and contract principles are not violated by limiting jurisdiction of the issue here to the NLRB and denying recourse to arbitration.

The order should be modified, on the law and on the facts, by denying the motion as regards grievance 2079-A and, as so modified, affirmed, without costs.

EAGER, J. (dissenting in part). The majority, in affirming Special Term with respect to grievance No. 2286-G, do not adopt the reasoning of Special Term which concluded that the questions involved in the grievance were exclusively determin-

able by the NLRB; and the majority state that "the field is not pre-empted". This has support in the decisions. In *Matter of Klein* v. *Styl-Rite Optics* (8 A D 2d 811, 812) we said, "There is no question but that there is no pre-emption of enforcement by arbitration or by action in a State court of voluntary agreements merely because a breach might also invoke a Federal remedy". (See further, *Matter of Carey* [*Westinghouse Elec. Corp.*], 6 A D 2d 582, affd. 6 N Y 2d 934; *Lodge No. 12, etc.* v. *Cameron Iron Works*, 257 F. 2d 467; *Freight Drivers & Helpers, etc.* v. *Quinn Freight Lines*, 195 F. Supp. 180; *Post Pub. Co.* v. *Cort*, 334 Mass. 199.)

The fact that incidentally there may be involved a controversy between the petitioner union and a rival union as to right of representation is immaterial on the question of whether or not the petitioner union is entitled to proceed to arbitration upon a grievance involving the interpretation or alleged breach of provisions of the contract. The argument that the real dispute is between two unions "ignores the fact that the parties by contract agreed to negotiate individual agreements covering any operations in which members of the plaintiff union were not employed, and to arbitrate any differences. The union should not be forced to abandon its rights under the contract simply because the Board may also have jurisdiction of a portion of this dispute." (*Freight Drivers & Helpers, etc.* v. *Quinn Freight Lines, supra*, p. 182.)

There being no pre-emption depriving this court or the arbitrators of jurisdiction, then this court is bound to give effect to the agreement of the parties. The contract here required Westinghouse to recognize the petitioner union as the representative of production and maintenance employees, and a refusal of Westinghouse to do so would constitute a breach of contract. Under the express terms of the contract, a grievance involving the interpretation of the provisions of the contract appertaining to such an alleged breach, and the rights and obligations of the parties in connection therewith, constitutes an arbitrable grievance. Having by their agreement chosen a particular forum for determination of such a grievance, the parties may not be relegated to remedies before another forum upon the ground that the latter forum is more expert in the particular field or that orderly process would be best served by proceeding before said forum.

Furthermore, the court may not now concern itself with the merits of the grievance (see *Matter of Fownes Bros. & Co.* [*Glove Cutters*], 14 A D 2d 235) nor with questions pertaining to the jurisdiction of the arbitrators over particular phases of

the dispute. The questions of law and fact with respect to the grievance are for the arbitrators, and this, in my opinion, would include questions as to their jurisdiction over particular phases of the grievance, incidental or otherwise. (See *Matter of Carey* [*Westinghouse Elec. Corp.*], 6 A D 2d 582, *supra*; *Post Pub. Co.* v. *Cort,* 334 Mass. 199, *supra.*)

Finally, there is nothing policy-wise which justifies this court in refusing to give effect to the contract that the parties have made. There is no pending proceeding before the NLRB involving this particular grievance, and the jurisdiction and processes of the board are not being interfered with. The Federal act specifically provided that the power of the board over unfair labor practices " shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise ". (U. S. Code, tit. 29, § 160, subd. [a].) " Since the Board's power is plenary in all respects, ' neither the existence of an agreement to arbitrate nor a rendered award can preclude the Board from exercising its statutory jurisdiction.' But certainly an award or an agreement to arbitrate may serve to temporarily assuage the aggrieved party and afford validity to contract terms (even including unfair labor practices) until a final disposition of the matter of unfair labor practice be made by the Board. Even though the Board is not bound by an arbitration award, it may find that compliance with the award is not violative of the Act, or it may even, in the exercise of its discretionary power, decline action because an award has been made or arbitration is possible." (*Lodge No. 12, etc.* v. *Cameron Iron Works,* 257 F. 2d 467, 473, *supra.*)

Voluntary arbitration of disputes in labor matters may exist and should be utilized as a remedy concurrent with the full functioning of the National Labor Relations Board. (See *Lodge No. 12, etc.* v. *Cameron Iron Works, supra.*) It may so exist and be utilized here. Therefore, I would reverse the order of Special Term insofar as it denies the motion to compel arbitration of grievance No. 2286-G, and I would direct arbitration of such grievance. Otherwise, I concur in the majority opinion.

BOTEIN, P. J., VALENTE and STEVENS, JJ., concur with STEUER, J.; EAGER, J., dissents in part in opinion.

Order entered on April 18, 1961 modified, on the law and on the facts, by denying the motion as regards grievance 2079-A and, as so modified, affirmed, without costs. Settle order on notice.