LOCAL LODGE NO. 1836 OF DISTRICT 38 OF THE INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL-CIO, Petitioner,

v.

RAYTHEON MANUFACTURING COMPANY, Respondent.

Civ. A. No. 61–97–C.

United States District Court
D. Massachusetts.

Jan. 24, 1962.

Robert L. Molinar, Lexington, Mass., for respondent Donald Stahl and Timothy J. Murphy, Boston, Mass., for intervenor.

Arthur J. Flamm, Boston, Mass., for petitioner.

CAFFREY, District Judge.

This is an action in which petitioner, Local Lodge No. 1836 of District 38 of the International Association of Machinists, AFL–CIO (Union), seeks enforcement of an alleged agreement to arbitrate a dispute between it and the respondent, Raytheon Manufacturing Company (Raytheon), an employer of members of the Local.

The petitioner is an unincorporated association with a principal place of business in Waltham, Massachusetts. It invokes the jurisdiction of this Court under Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185 et seq. Petitioner is a labor organization within the meaning of the Act. The respondent is a Delaware corporation with a place of business in Waltham, Massachusetts. The respondent is engaged in an industry affecting interstate commerce. Local Lodge 1505, International Brotherhood of Electrical Workers (Intervenor) is a labor organization within the meaning of the Act and it, also, represents a group of Raytheon employees. Both Intervenor and Union represent employees of Raytheon with respect to wages, hours, and other conditions of employment.

On August 8, 1956, Raytheon and Union entered into a collective bargaining agreement which was to be effective from August 8, 1956 to May 31, 1959. Article I of the agreement provided:

"The Company recognizes the Union as the sole and exclusive collective bargaining agent with respect to wages, hours and conditions of employment for all of the Company's employees in the Company's presently existing Massachusetts plants while, during the life of this Agreement, they are classified as Experimental and Development Machinists A, B and C; Machinists A, B and C; Maintenance Machinists A and B; Die Makers A, B and C; Tool Makers A, B and C; and Tool Grinders A, B and C, in accordance with the job classification descriptions in effect on June 1, 1953, incorporated herein by reference, or as apprentices to such job classifications. The labor grades of such occupational titles are shown in Appendix 'A.' Such persons are hereinafter referred to as 'the employees,' and such employees together are referred to as 'the unit.' All other employees and supervisors as defined in the Act are excluded from this Agreement."

On November 7, 1958, Union filed a grievance alleging that Raytheon had violated Article I of the agreement by assigning work encompassed within this agreement to employees outside the bargaining unit at a time when the employees within the bargaining unit were ready, willing, and able to perform such work. (The work in question was assigned to members of Intervenor by Raytheon.) Thereafter, Union and Raytheon discussed this grievance at some length and on February 4, 1959 Union requested arbitration. This request was later withdrawn pending further discussions between the parties.

On September 8, 1959, the parties entered into a collective bargaining agreement to be effective from September 8,

1959 to May 31, 1961. Article I was carried forward in this new agreement without change. The parties continued to have additional discussions about the work-assignment dispute and failing to reach any agreement as a result of these discussions, Union again requested arbitration by letter dated May 13, 1960, which request was refused by Raytheon's letter dated May 26, 1960.

The answer filed herein on behalf of Raytheon discloses no real issue as to any material fact, it being admitted that Exhibits A and E are copies of the agreements; that Exhibit C is a copy of the job descriptions referred to in Article I; that Exhibits B and D establish receipt by Raytheon of the grievance; that arbitration was requested through Union's letters dated February 4, 1959 and May 13, 1960; and that arbitration was refused by Raytheon's letter dated May 26, 1960.

■ This matter is presently before the Court on cross-motions for summary judgment. Union's motion seeks summary judgment in the form of an order for arbitration and Intervenor and Raytheon's motions for summary judgment seek dismissal. The basic objection urged by respondents Raytheon and Intervenor is that this Court lacks jurisdiction. Respondents argue that the National Labor Relations Board has exclusive jurisdiction over work-assignment disputes which cannot be resolved by the parties. The cases cited by them for this proposition, San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) and Garner v. Teamsters, etc. Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953) do not establish this proposition in the context of the instant case. There is, however, authority clearly and explicitly holding that district courts do have jurisdiction under Section 301(a). See Local 33, International Hod Carriers, etc. v. Mason Tenders District Council, 291 F.2d 496, 504 (C.A.2, 1961), where, speaking for the Court, Judge Medina said:

"It is obvious from reading these sections that this statutory scheme does not purport to give the Board general supervisory powers over controversies between labor organizations relating to work assignments. The Board may act only when a charge has been filed and a mere disagreement over work assignments is not enough to create an unfair labor practice. * * * We think to hold that the District Court has no jurisdiction would run counter to the position which Congress has accorded to voluntary adjustments."

A similar ruling appears in the opinion of Chief Judge Sweeney in Freight Drivers & Helpers Local Union 557, etc. v. Quinn Freight Lines, 195 F.Supp. 180 (D.Mass.1961).

I rule that this Court does have jurisdiction to entertain an action of the instant type under the Labor Management Relations Act.

■ Raytheon's second major argument is that it never agreed to arbitrate work-jurisdiction matters when it entered into this collective bargaining agreement with Union. That this contention must be resolved adversely to Raytheon is clearly demonstrated by the opinion of the Supreme Court in the case of United Steelworkers of America v. Warrior & Gulf Co., 363 U.S. 574, at pp. 582–583, 80 S.Ct. 1347, at p. 1353, 4 L.Ed.2d 1409 (1960), where Mr. Justice Douglas observed:

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. We do not agree with the lower courts that contracting-out grievances were necessarily excepted from the grievance procedure of this agreement."

The contract between Raytheon and Union in the instant case provides, in Article XVIII, Sec. 18.0:

"For the purposes of this Agreement the term 'grievance' means any dispute between the Company and the Union, or between the Company and any employee, concerning the interpretation of this Agreement in its application to any particular situation or as to whether it has been observed or performed."

I rule that the grievance herein is an arbitrable grievance within the agreement between Raytheon and Union.

The remaining question is whether or not Intervenor has standing to participate in the arbitration between Raytheon and Union over the objections of Union. In its brief Raytheon urges upon the Court language in the case of Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 457, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), to the effect that:

"Some (problems) will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem."

Raytheon then argues that the facts of the instant case call for application of judicial inventiveness. I rule that this argument, while tempting, may not properly be accepted. What Raytheon is urging the Court to do in this case is to create and confer upon Intervenor a *right* of intervention born of the national labor policy as distinguished from merely affording or fashioning a new *remedy*. In its contract with Raytheon, Union promised to arbitrate upon the happening of certain contingencies and Raytheon made a reciprocal promise. Neither Raytheon nor Union agreed to arbitrate with any third party, however closely related that third party may be to the subject matter of the arbitration. I do not conceive that the national labor policy, which commends to district judges the fashioning of new *remedies,* can be fairly construed to authorize district courts to amend labor management agreements and thereby create new *rights* in third parties who are strangers to the agreement, and simultaneously to impose uncontracted-for obligations upon the parties to the agreement in derogation of the agreement as made.

Union's motion for summary judgment is allowed. Raytheon and Intervenor's motions for summary judgment and to dismiss are denied.