INTERNATIONAL UNION OF ELEC-
TRICAL, RADIO AND MACHINE
WORKERS, AFL–CIO, an unincorporat-
ed labor organization, Plaintiff,

v.

WESTINGHOUSE ELECTRIC CORPO-
RATION, Defendant.

No. 62 Civ. 1989.

United States District Court
S. D. New York.

May 16, 1963.

Lieberman, Katz & Aronson, New York City, Benjamin C. Sigal, Washington, D. C., for plaintiff; Isadore Katz, New York City, of counsel.

Cravath, Swaine & Moore, New York City, for defendant; John H. Morse, John F. Hunt, Jr., New York City, of counsel.

WEINFELD, District Judge.

This is a motion for summary judgment by the plaintiff Union in an action brought to compel arbitration, pursuant to the terms of a collective bargaining agreement, of twelve grievances filed by the Union on behalf of certain of its members employed at one or more plants of the defendant. After the parties had unsuccessfully exhausted the grievance procedure provided for by the agreement, the defendant refused to submit the disputes to arbitration, contending they were nonarbitrable. The agreement provides that in the event either party challenges that a grievance is arbitrable, the issue is to be determined by a court, and thus the matter is here for determination.[1]

The Union contends that the twelve grievances involve either the interpretation, application or violation by the employer of one or more provisions of the collective bargaining agreement and that under its terms the grievances are subject to arbitration. The company not only denies the alleged violations, but asserts that each, upon various grounds, is expressly excluded from the arbitral process by the agreement. In addition, the defendant raises a plea of laches as to four grievances, asserts that as to a fifth an award upholding the Union's position would involve the company in an unfair labor practice, and urges as to a sixth that the National Labor Relations Board has exclusive jurisdiction.

The principles governing labor arbitration under agreements have been delineated in the trilogy of the Steelworkers cases decided in 1960.[2] The underlying rationale of those holdings rests upon the federal policy to promote industrial peace through collective bar-

---

1. Section XIV-A—ARBITRATION, C(5).

2. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America

v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). See Carey v. General Elec. Co., 315 F.2d 499 (2d Cir. 1963), cert. applied for; Procter & Gamble Independent Union of Port Ivory, New York v. Procter & Gamble Mfg. Co., 298 F.2d 644 (2d Cir. 1962).

gaining agreements and the recognition that a major factor in achieving that objective is the grievance machinery established by the parties to resolve disputes as part and parcel of the collective bargaining process itself. Although viewed in so favorable a climate, the arbitral process for the resolution of grievances is not imposed by law, but must rest upon a consensual basis. Thus the Court's role is limited. It has no concern with the merits of any particular grievance. Its sole inquiry is restricted to whether the parties did agree to arbitrate the grievance. The issue is to be decided within the framework of their collective bargaining agreement. And when the parties have entered into a comprehensive arbitration provision, any challenge that a grievance is not intended to be covered thereunder must find support in unmistakably clear language of exclusion; arbitration of a particular dispute is to be ordered unless it may be said with positive assurance that it is excluded by the contract. Whatever doubts exist as to whether the grievance is within the ambit of the arbitral process are to be resolved in favor of coverage. The defendant here contends that it meets the exacting test imposed upon one who challenges arbitration.

The arbitration clause of the agreement reads as follows:

"SECTION XIV–A—ARBITRATION—

"A. Except as otherwise provided in this Agreement, any grievance involving action taken or failure to act subsequent to March 20, 1956, which remains unsettled after the grievance procedure has been exhausted pursuant to Section XIV and which involves either

"(1) The interpretation, application or claimed violation of a provision of this Agreement or of a local supplement in effect in the bargaining unit in which the grievance arose, or

"(2) a disciplinary penalty, release or discharge which is alleged to have been imposed without just cause,

shall be submitted to arbitration upon the written request of either the Union or the Company. * * "

■ It is to be observed that the arbitration provision quoted above is not limited to the "interpretation or application" clause often found in labor contracts, but extends to any "claimed violation of a provision of this Agreement or of a local supplement." The Union here asserts that each of the twelve grievances constitutes a violation of one or more provisions of the agreement and is arbitrable under subsections XIV–A, A(1) and (2). Claims of alleged violation, whether substantial or frivolous, which are denied are disputes to be resolved by this arbitral process unless it appears beyond peradventure that they are excluded.[3]

The defendant's claim that the grievances are not arbitrable rests in the main upon the following subdivision of the above section:

"D. Notwithstanding any other provisions of this Agreement, no arbitrator shall, without specific written agreement of the Company and the Union with respect to the arbitration proceeding before him, be authorized to:

"(1) Add to, detract from, or in any way alter the provisions of this Agreement or any Supplement or local supplement to this Agreement;

"(2) Establish or modify any wage or salary rate, job classification or classification of any employe except as provided in Sec-

---

3. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 568–569, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

tion VIII, paragraphs 9.D. and 9.E., or any time value under the incentive system; * * *"

The twelve grievances, although somewhat differently phrased by the parties, fall within general categories. Three involve work assignments;[4] two charge that work was performed by workers outside a specified unit;[5] two concern changes in time values;[6] two allege changes in methods of pay from incentive to day work and vice versa;[7] one

4. National Appeal Grievance No. 4099–A concerns a union objection to the employment of a packer as a temporary additional crane operator without first attempting to obtain an extra craneman from either of the other two shifts as it alleges is required by Sections X and XII of the National Agreement as well as provisions of the Local Supplement Agreement. The company contends that this dispute is beyond the jurisdiction of the arbitrator under XIV–A D(1) of the National Agreement.

National Appeal Grievance No. 4190–D is a claim by the union that the company ordered a dayworker against his will to perform a temporary assignment other than his regular job without negotiations with the union as required under VIII 8 C of the National Agreement. The company argues that the dispute is without the jurisdiction of the arbitrator under XIV–A D(1), and that the plaintiff is guilty of laches.

National Appeal Grievance No. 4227–A involves a union claim that work normally performed by jig and fixture operators in the tool room was assigned to workers in the boring mill group creating an overtime situation in the latter group, while jig and fixture operators were being laid off, all in violation of Section X of the National Agreement and of the Local Supplement Agreement. The company resists arbitration under subdivision XIV–A D(1) of the National Agreement.

5. In National Appeal Grievance No. 3790–G the union claims that the company assigned work formerly performed by workers within the bargaining unit to employees outside the unit in violation of the recognition clause of the National Agreement and also denied the shop stewards the right to investigate conditions of employment permitted under the Agreement. The company refused to proceed to arbitration on the grounds that subdivisions XIV–A D(1) and (2) excluded the grievance from the arbitration process and in addition that since the matter involved the scope of the bargaining unit it was within the exclusive jurisdiction of the National Labor Relations Board.

National Appeal Grievance No. 3189–C complains of company action in hiring drafting personnel from an outside concern to perform, as the union claims, "bargaining unit work within the plant and side by side with bargaining unit draftsmen" in violation, *inter alia*, of the recognition clause of the contract. The company refused to proceed to arbitration, claiming under subsection XIV–A D(1) that any award would add to, detract from or alter the provisions of the agreement and in addition that to uphold the union's position would involve the company in an unfair labor practice.

6. In National Appeal Grievance No. 3752–C the union charges that the company changed the established and recorded time value on certain machines and speeded up their operation without the addition of any operator aids or any change in method in violation of VIII 8E(2)(a) of the National Agreement relating to Wages. The company raises laches and subdivision D(2) of Section XIV–A of the National Agreement as defenses to arbitration.

National Appeal Grievance No. 3778–A is also a claim of violation of VIII 8E(2)(a) of the National Agreement. The union says that the company changed the established and recorded value for a cleaning unit on a particular style without a change in method as required by the agreement. The company resists arbitration under subdivision XIV–A D(2).

7. In National Appeal Grievance No. 3950–C the union complains that the company changed the method of compensation of a group of employees from incentive to day work when it installed new machines without discussion or negotiation with the union, as the union alleges is required under subdivisions VIII 8E and 10 of the National Agreement. The company's refusal to arbitrate is based upon a contention that the union seeks to have an arbitrator modify or establish wage rates and thus under subdivision XIV–A D(2) of the National Agreement the grievance is without the jurisdiction of an arbitrator.

In National Appeal Grievance No. 3451–C the union alleges that the compa-

relates to a seniority claim;[8] one to job classification;[9] and one to the discharge of an employee—or, as the company contends, to a refusal to rehire because of physical disability.[10]

 The defendant's challenge to four of the grievances, insofar as it advances the plea of laches, may be readily disposed of. Any contention of delay in the presentation and prosecution of grievances is a matter within the competence of the arbitrator if otherwise they are arbitrable.[11]

The defendant's principal contention is that if the arbitrator sustained the Union's grievances, he would in effect be adding to, detracting from or altering the agreement, or establishing or modifying a wage rate, job classification, or time value, and that all these matters are beyond his jurisdiction by virtue of subdivisions D(1) and (2). The Union, on the other hand, not only denies that any of the grievances come within the proscription of those subdivisions, but con-

tends that in any event they do not deprive the arbitrator of jurisdiction, but merely restrict his award-making power.

 Upon a consideration of the provision in question, as well as all others of the agreement advanced by the defendant to support its claim of exclusion, and upon the applicable law, I am of the view that subdivisions D(1) and (2) do not deprive the arbitrator of jurisdiction to pass upon the grievances. The very language of the introduction to the subsection assumes jurisdiction by the arbitrator. Thus, its essence reads:

"Notwithstanding any other provisions of this Agreement, *no arbitrator shall*, without specific written agreement of the Company and the Union *with respect to the arbitration proceeding before him*, be authorized to: * * *." (Emphasis supplied.)

A "proceeding before" an arbitrator assumes that the grievance at issue is within his jurisdiction. Thus, the limita-

---

ny changed the method of wage payment from a daywork basis to an incentive basis without any negotiation with the union, as is required under subsection VIII 10 of the National Agreement. The company resists arbitration under subdivision D(2) of section XIV–A, as well as subdivision VIII 10 C, which provides that the question of whether consent of the union to a change in method of payment was unreasonably withheld shall not be arbitrable. The company also claims arbitration is precluded by laches.

8. In National Appeal Grievance No. 4270–D the union charges that the company improperly computed the seniority of employees who were transferred from one company plant at which the employees were not represented by a labor organization to another company plant at which the plaintiff union was the collective bargaining agent. According to the union, the company assigned seniority dates to the transferred employees on the basis of their total service with the company, rather than from the date of their entry into the bargaining unit as the union contends is required under these circumstances by the seniority provisions of the National Agreement—Section XII—as well as by the provisions of the Local Supplement Agreement. The company

resists arbitration under subdivisions XIV–A A(1) and D(1).

9. In National Appeal Grievance No. 4068–A the union alleges that the company used employees in a lower classification to do work theretofore performed by workers of a higher classification contrary to the provisions of a Local Supplement Agreement. The company declined to arbitrate on the basis of subdivisions XIV–A D(1) and (2) of the National Agreement.

10. National Appeal Grievance No. 4037–A involves a union claim that an employee who was placed on the disability roll some time ago has improperly been denied employment now even though he is physically able to work. The union alleges, *inter alia*, that the issue is arbitrable under XIV–A A(2) for it involves the discharge of an employee. The company answers that what is involved is not a discharge, but a refusal to rehire and that the grievance thus is not arbitrable under XIV–A D(1). Moreover, the company seeks to tax the union with laches.

11. Livingston v. John Wiley & Sons, Inc., 313 F.2d 52 (2d Cir. 1963), cert. granted 373 U.S. 908, 83 S.Ct. 1300.

tion is not as to his jurisdiction to hear the grievance, but upon his award-making authority. That the general thrust of subdivisions D(1) and (2) is a restriction upon remedy and not a bar to arbitration is emphasized by reference to another provision of the agreement, where the parties used unequivocal language to express an exclusionary purpose. In Section VIII, which in general relates to "Wages," in a given situation where a local unreasonably withholds its consent to a change in payment plans, it is specifically provided that "the question whether consent was withheld unreasonably shall not be arbitrable." [12] Thus, when the parties wished to exclude a matter from arbitration, they knew how to say so in precise terms. The references and cross-references by the parties to other provisions in the agreement in support of their opposing positions serve but to emphasize that the claimed exclusionary clause is not written with the same precision which the parties brought to bear when in fact they did use clear language of exclusion, as noted. In the absence of such expressly stated exclusionary purpose, the ambiguity, if any, under the authorities must be resolved in favor of the arbitrable process.

The conclusion here reached that under this contract the grievances are within the jurisdiction of the arbitrator, but subject to the enumerated limitations upon his award-making authority, finds strong support in Carey v. General Electric Co.,[13] recently decided by our Court of Appeals.[14] The instant arbitration clause appears at least as broad as that there considered. The defendant there claimed that the grievances were excluded from its scope by reason of a further provision which read:

"It is specifically agreed that no arbitrator shall have the authority to establish or modify any wage, salary or piece rate, or job classification or authority to decide the appropriate classification of any employee"

a provision not substantially different from subdivisions D(1) and (2) herein. The Court of Appeals, applying the doctrines enunciated in the Steelworkers cases, held that it did not deprive the arbitrator of jurisdiction, but merely proscribed his award-making powers by restricting the remedies he might fashion after deciding the grievances upon the merits. Practically all the contentions here advanced by Westinghouse against lack of jurisdiction to hear the grievances were pressed upon the Court by General Electric in that case, but were disposed of adversely to its main thesis.

In answer to the argument that to read the clause merely as empowering the arbitrator to hear a case, but without power to make an effective award, would render it meaningless, the Court responded:

"The clause was obviously designed to prevent the arbitrator from making the type of decision which is normally reserved for the parties at the bargaining table. Thus, the arbitrator cannot establish wage rates or job classifications where none existed before and cannot modify those rates and classifications which have been hammered out at the bargaining table. Nor can he assign an unclassified employee

---

12. Section VIII—Wages, 10.C.

13. Docket No. 27652, 315 F.2d 499, cert. applied for.

14. While it is true that the New York State Court of Appeals in Carey v. Westinghouse Elec. Corp., 15 A.D.2d 7, 221 N.Y.S.2d 303 (1st Dept. 1961), aff'd, 11 N.Y.2d 452, 230 N.Y.S.2d 703, 184

N.E.2d 298 (1962), cert. granted, 372 U.S. 957, 83 S.Ct. 1012 (1963), involving the identical contract in the instant case, took a different position with respect to some of the issues here presented, this Court, of course, is bound by the ruling in the General Electric case. The New York State Court ruling was presented to and urged upon our Court of Appeals. (Appellant's Brief, e. g., pp. 25–27.)

to a particular job classification. Such remedies partake more of 'legislation' than adjudication, and our reading of the limiting clause merely gives effect to the parties' apparent intention to restrain the arbitrator from exercising a legislative function."

And as to the further argument that the construction favorable to jurisdiction but limiting the available remedy would result in a waste of time, effort and money, and might result in an unauthorized award requiring litigation to vacate it, the Court replied:

" * * * Arbitration may well contribute to industrial peace even if it results in the arbitrator's determination that he can make no valid award because of the limitations upon his authority, or that the employee has no case on the merits. * * * Should his decision or the remedy exceed the bounds of his authority as established by the collective bargaining agreement, that abuse of authority is remediable in an action to vacate the award."

 The defendant, recognizing the broad sweep of the General Electric ruling, professes to see substantial factual distinctions which make it inapposite to this case. The defendant here presses hard that the Steelworkers cases upon which the Court of Appeals relied to apply "the canons for construing labor agreements" contained broad no-strike clauses which were the quid pro quo of the grievance procedure, whereas in the instant case the Union retains the right to strike if the company refuses to proceed with arbitration as to any grievance that is arbitrable, or in the instance of a grievance that is not subject to arbitration. I am of the view that this claimed distinction does not require a different result in the construction to be placed upon clauses D(1) and (2) of

section XIV–A. An exception in a no-strike clause does not impair the basic holdings of the Steelworkers cases, a matter as to which Mr. Justice Brennan in his concurring opinion issued a cautionary statement.[15] This very point was also urged upon the Court of Appeals by General Electric,[16] and although it is not discussed in the opinion, the Court's reasoning necessarily rejects it. The fundamental question, as the defendant itself repeatedly states, is whether, within the intendment of the parties to the agreement, certain grievances were excluded from the arbitrator's jurisdiction. This is to be determined by the clause itself, viewed in the context of the entire agreement and not by reference to truncated portions of a provision here and there, or by the unilateral understanding of one of the negotiators to the agreement during the negotiating process. This is not an action to reform a contract.

The Court has also considered the defendant's contention that language and structural differences between the clause in the General Electric case and the instant one require a different conclusion, but finds the arguments entirely unpersuasive.

 Other matters raised by the defendant require but brief notice. The defendant argues that with respect to one grievance, the issue sought to be arbitrated involves the scope of the appropriate bargaining unit and employee representation, and accordingly is within the exclusive jurisdiction of the National Labor Relations Board and precludes resort to the arbitration procedure. Again this very matter was considered at length in Carey v. General Electric Co. and ruled upon by the Court of Appeals adversely to the defendant's position. Thus, the Court said:

"The strong reliance upon arbitration as a means of peacefully and

15. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 569, 573, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

16. Appellant's Brief, p. 12; Appellant's Reply Brief, pp. 5–7.

expeditiously resolving labor disputes, evidenced in the drafting of section 301 and in its interpretation by the Supreme Court, [citing cases] might be immeasurably frustrated were it within the power of a recalcitrant party to assert that his conduct, alleged to be in breach of contract, is also an unfair labor practice and within the sole domain of the NLRB;

* * *

* * * * *

"It is true that only the Board can conclusively define the scope of the bargaining unit, just as the Board is the authority for the definition of unfair labor practices. But an arbitrator, in determining whether a party has violated the collective bargaining agreement, does not define an unfair labor practice; nor need he necessarily, in construing the employer's contractual obligation to recognize the union as the bargaining agent in the unit delineated by the Board, define that unit or alter its scope."

 The defendant seeks to withhold another grievance from arbitration on the ground that arbitration might compel it to commit an unfair labor practice. To this the Court of Appeals responded:

"[I]f the arbitrator does uphold the union's construction of the * * * provision in question, he might himself decline to fashion an award based upon it for fear that he would encourage a practice banned by the labor act. We cannot construct a framework of legal principles governing arbitration on the theory that the arbitrator is ignorant or oblivious of the pronouncements of the Board and the courts."

Finally, the company contends that one grievance is unequivocally and specifically barred by section VIII 10 C of the agreement which contains the exclusionary language already referred to, to wit: "The question whether consent was withheld unreasonably shall not be arbitrable."

In National Grievance No. 3451–C, involving a plant at Bloomfield, New Jersey, the Union protest involves a change in the method of payment from daywork to incentive. The agreement provides as follows:

"C. In all other situations not related to the preceding paragraph, whether or not local wage schedules have been incorporated into local wage supplements, it will be the policy of the Company and the normal practice not to change the established plan of payment of employes from incentive to daywork or from daywork to incentive except *after discussion and agreement between the local Management and the Local.* If in any instance a Local unreasonably withholds its consent, then after a period of negotiations of not less than two weeks, the local Management may elect to put the change into effect, but the Local will thereupon have the right to strike over this issue. The question whether consent was withheld unreasonably shall not be arbitrable." (Emphasis supplied.)

The Union's claim is that the change was made effective without "discussion and agreement." The company now contends that even if it did not negotiate, the matter is beyond arbitration by reason of the provision: "The question whether consent was withheld unreasonably shall not be arbitrable." Its position is that the filing of the grievance establishes that the Union would have withheld its consent. However, the charge is that the Union was never asked to give its consent and the change was put into effect on a unilateral basis. The issue before the arbitrator is not whether the Union unreasonably withheld its consent, but whether the company violated the terms of the agreement by putting into effect the change and method of payment without "discussion and agreement," as required by the section in question.

Accordingly, the Court holds that all the grievances are subject to arbitration under the terms of the agreement, and the plaintiff's motion for summary judgment is granted.