**Thomas D. RAMSEY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 14226.**

United States Court of Appeals
Seventh Circuit.

Feb. 12, 1964.

George Rose, Indianapolis, Ind., for petitioner.

Harold A. Katz, Irving M. Friedman, Jerome Schur, Arthur Brody, Kenneth Lewis, and Stanley J. Horn, Chicago, Ill., for intervenors; Joseph Rauh, Washington, D. C., of counsel.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin J. Welles, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Paula Omansky, Atty., N. L. R. B., for respondent.

Before HASTINGS, Chief Judge, and DUFFY and CASTLE, Circuit Judges.

HASTINGS, Chief Judge.

Petitioner, Thomas D. Ramsey, seeks review of an order of the National Labor Relations Board issued September 25,. 1962. This order dismissed petitioner's. unfair labor practice complaint which. charged discrimination, restraint and coercion in violation of sections 8(b) (1) (A), 8(b) (2), 8(a) (1) and 8(a) (3) of the National Labor Relations Act, 61. Stat. 136, 73 Stat. 519, 29 U.S.C.A. §§ 151 et seq. The Board's decision is reported in International Harvester Co.,. Indianapolis Works, 138 N.L.R.B. 923. (1962).

Petitioner began employment with International Harvester Company at Indianapolis, Indiana on February 10, 1942.

On September 16, 1955, the company executed a collective bargaining agreement with Local Union 98 of International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, AFL–CIO,[1] for a term which expired August 1, 1958. The agreement contained a union security provision which required employees, as a condition of employment, to join the union and pay an initiation fee and periodic dues. There was a provision for checkoff of dues.

Petitioner joined the union "under protest" and authorized the company in writing to deduct periodic dues from his. wages.

In 1957, the Indiana General Assembly enacted a Right to Work Law, Ind. Ann.. Stat. §§ 40–2701 through 40–2706. (Burns' Supp.), which made it unlawful to condition employment upon membership in a labor organization.

On April 29, 1958, petitioner sent a. letter by registered mail to the company and the union. The second paragraph of this letter stated, "I request, no deduction be made from my pay except that. which is a condition of employment. If at any time such condition ceases to exist, by law or otherwise, I request my release from membership in Local No.. 98."

---

1. The union filed a brief in support of the Board's order in this appeal by leave granted by the court.

The company interpreted this letter as a request to cancel petitioner's checkoff authorization. Copies of a memorandum to this effect were sent by the company to petitioner and the union. The company did not deduct petitioner's union dues from his wages in May, 1958, and thereafter.

On July 1, 1958, the union certified to the company that petitioner was more than sixty days in arrears in payment of his dues and requested "that the appropriate action be taken against" petitioner.

Under the contract, no action could be taken against petitioner if he paid his dues within ten working days after the union certified him as delinquent. Petitioner was not informed of the union's certification of delinquency and did not pay the delinquent dues within the ten day period or thereafter.

On July 21, 1958, the union filed a grievance with the company, charging that the company had violated the contract by not discharging petitioner.

On August 6, 1958, five days after expiration of the collective bargaining contract, the company rejected the union's grievance on two grounds. The company stated that due to expiration of the contract, the union security provisions were inoperative under the Indiana Right to Work Law. Also, that an Indiana circuit court order prohibited it from enforcing the union security provisions of the contract.[2]

On August 22, 1958, the union certified its grievance of July 21, 1958, to formal arbitration pursuant to the provisions of its labor agreement with the company. Petitioner was not given notice of the arbitration proceeding and did not participate therein. The arbitrator found that the company should have discharged petitioner. However, due to the Indiana Right to Work Law, the arbitrator, with the union's consent, determined petitioner should be regarded as having been re-employed on August 1, 1958, the date the contract expired.

As a result of the arbitrator's decision, petitioner's seniority was reduced and he was laid off work from August 22, 1960 until April 17, 1961, as a result of an economic reduction in the labor force.

Petitioner filed an unfair labor practice complaint with the National Labor Relations Board. The trial examiner found that the company and union had discriminated against petitioner in violation of the Act. The recommended order would restore petitioner's seniority with back pay.

On appeal, the Board rejected the trial examiner's recommended order and dismissed petitioner's complaint. It held, with two members dissenting, that while it had jurisdiction to determine whether unfair labor practices occurred, the policies and purposes of the Act would be better effectuated by honoring the arbitration award. International Harvester Co., Indianapolis Works, 138 N.L.R.B. 923, 929 (1962).

The issues presented to this court are whether the Board has the discretion to defer to the decision of an arbitrator rather than determine the merits of an unfair labor practice complaint and, if the Board does have such discretion, whether it abused it in this case.

■ A primary purpose of national labor relations laws is that of settling labor problems by means of collective bargaining. An increasingly recognized

---

2. This order was entered in the case of Snavely et al. v. International Harvester Company (unreported). The case involved the company's Fort Wayne, Indiana plant. The Fort Wayne plant was governed by the same collective bargaining agreement as the Indianapolis plant. The court held the union security provisions to be null and void and unenforceable under Indiana's Anti-Injunc-

tion Act of 1933, Ind.Ann.Stat. §§ 40-501 et seq. (Burns'). This case was pending on appeal when the company rejected the union's grievance. Also, the Appellate Court of Indiana had found contrary to the Snavely case and held that the Anti-Injunction Act did not invalidate the union shop. Smith, etc. v. General Motors Corp., et al., 128 Ind. App. 310, 143 N.E.2d 441 (1958).

and important policy, as a vital part of the collective bargaining process, is encouragement of arbitration. We recognized and approved this policy in Local Union No. 702, etc. v. Central Ill. Pub. Serv. Co., 324 F.2d 920, 923 (7 Cir. 1963). See United Steelworkers of America v. Warrior & Gulf Co., 363 U. S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

The Supreme Court recently carried this policy one step further in Carey v. Westinghouse Elec. Corp., 84 S.Ct. 401. There, two unions represented employees of the respondent employer. One union had been certified as the exclusive bargaining representative for "all production and maintenance employees." The other union was certified as the exclusive bargaining representative for "all salaried, technical" employees. The union representing the production and maintenance employees filed a grievance with the employer, asserting that certain employees represented by the technical employees' union were performing production and maintenance work.

A collective bargaining agreement between the union and respondent contained a grievance procedure for the use of arbitration in case of unresolved disputes, including those involving the "interpretation, application or claimed violation" of the agreement.

The employer refused to arbitrate on the ground that the controversy presented a representation matter for the National Labor Relations Board.

The union petitioned the Supreme Court of New York for an order compelling arbitration. From a refusal by that court and an affirmance by the Appellate Division, 15 A.D.2d 7, 221 N.Y.S. 2d 303, the union appealed to the New York Court of Appeals, which affirmed, holding that the matter was within the exclusive jurisdiction of the Board since it involved a definition of bargaining units. 11 N.Y.2d 452, 230 N.Y.S.2d 703, 184 N.E.2d 298.

On certiorari, the Supreme Court reversed, quoting extensively from the Board's opinion in the instant case. The Court stated, "If by the time the dispute reaches the Board, arbitration has already taken place, the Board shows deference to the arbitral award,[7] provided the procedure was a fair one and the results not repugnant to the Act. As the Board recently stated:

" 'There is no question that the Board is not precluded from adjudicating unfair labor practice charges even though they might have been the subject of an arbitration proceeding and award. Section 10(a) of the Act expressly makes this plain, and the courts have uniformly so held. However, it is equally well established that the Board has considerable discretion to respect an arbitration award and decline to exercise its authority over alleged unfair labor practices if to do so will serve the fundamental aims of the Act.

" 'The Act, as has repeatedly been stated, is primarily designed to promote industrial peace and stability by encouraging the practice and procedure of collective bargaining. Experience has demonstrated that collective-bargaining agreements that provide for final and binding arbitration of grievance and disputes arising thereunder, "as a substitute for industrial strife," contribute significantly to the attainment of this statutory objective.' International Harvester Co., 138 N.L.R.B. 923, 925–926." Id. at 408 of 84 S.Ct.

In footnote 7 in the preceding excerpt from Carey, the Supreme Court again pays tribute to the Board holding in the instant case by citing with approval the language of the Board in another case following International Harvester. See Raley's, Inc., 143 N.L.R.B. No. 40, quoted from therein.

 Thus, the Supreme Court has held that the Board has the discretion to defer to the decision of an arbitrator. Our function in reviewing such cases is

788

to determine whether the Board abused its discretion in so deferring.

The Board laid down the standards it would apply in determining whether or not to defer to an arbitrator's decision, in its opinion in the present case:

"If complete effectuation of the Federal policy is to be achieved, we firmly believe that the Board, which is entrusted with the administration of one of the many facets of national labor policy, should give hospitable acceptance to the arbitral process as 'part and parcel of the collective bargaining process itself,' and voluntarily withhold its undoubted authority to adjudicate alleged unfair labor practice charges involving the same subject matter, unless it clearly appears that the arbitration proceedings were tainted by fraud, collusion, unfairness, or serious procedural irregularities or that the award was clearly repugnant to the purposes and policies of the Act." International Harvester Co., Indianapolis Works, 138 N.L.R.B. 923, 927 (1962).

▮ Petitioner contends, *inter alia,* that his rights were denied since he was not given notice of the arbitration hearing and did not appear there. We disagree. There is no statutory or constitutional right of an employee to be present at an arbitration hearing. It appears that the company fully and adequately defended petitioner's position at the hearing.

Petitioner does not contend that any other procedural irregularity, fraud or collusion entered into the arbitrator's decision.

We need not consider other contentions of petitioner, since we find Carey to be dispositive of this appeal.

We hold that the Board did not abuse its discretion in deferring to the decision of the arbitrator.

The Board's order dismissing petitioner's complaint and deferring to the award of the arbitrator is affirmed.

Affirmed.