Charles **AMPAGOOMIAN** et al.,
Plaintiffs,

v.

**JOHNSON MOTOR LINES, INC.**, et al.,
Defendants.

Civ. A. No. 4076.

United States District Court,
D. Rhode Island.

Sept. 7, 1971.

Robert Weihrauch, Worcester, Mass., Edward S. Goldin, Providence, R. I., for plaintiffs.

James M. Jerue, of Beals & Jerue, Providence, R. I., for Johnson Motor Lines, Inc.

Peter Lawson Kennedy, of Adler, Pollock & Sheehan, Providence, R. I., for International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers.

## OPINION

DAY, District Judge.

This is an action instituted by the plaintiffs under the provisions of Section 301(a) of the National Labor Relations Act of 1947, as amended, 29 U.S.C. § 185(a), against Local 251 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter called "Local 251") and against their employer, Johnson Motor Lines, Inc., a corporation organized under the laws of the State of North Carolina and operating a freight terminal in the Town of Lincoln, in the State of Rhode Island (hereinafter called "Johnson").

The gravamen of the plaintiffs' complaint is that Johnson and Local 251 violated the provisions of their collective bargaining agreement, known as the New England Freight Agreement and that as a result of collusion between Johnson and Local 251 they were deprived of their seniority rights as to layoffs by a decision of the Joint Area Committee, so-called, to which under said New England Freight Agreement all matters pertaining to the interpretation of any of its provisions were referable for final decision.

Plaintiffs seek judgment in their favor for the amount of all wages lost by them as a result of their alleged illegal layoffs, reasonable attorney's fees and costs. In addition they seek a declaratory judgment under the provisions of 28 U.S.C. § 2201 that said decision of said Joint Area Committee is null and void and determining the seniority rights of the plaintiffs as to lay-offs.

At the conclusion of the trial of this action, I reserved decision pending the filing of memoranda by counsel for the parties which have been carefully considered by me.

The evidence and the reasonable inferences to be drawn from it establish the following facts. Plaintiffs are all former employees of Emmott Valley Express Co. which operated a freight terminal in Uxbridge, Massachusetts until May 1, 1960. The defendant Johnson in 1946 opened a freight terminal in Pawtucket, Rhode Island, and continued to operate said terminal until July, 1966. The defendant Local 251 was the bargaining agent for the Johnson employees at said terminal. On May 1, 1960, Johnson purchased the assets of Emmott Valley Express Co. and continued thereafter to operate said Uxbridge terminal under its own name in the same manner as had Emmott Valley Express Co. Both before and after said acquisition by Johnson, Local 170 of said Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter called "Local 170") was the bargaining agent of said employees at said terminal. Early in 1966 Johnson decided to combine its operations in Uxbridge and Pawtucket into a single new terminal which was to be opened by it in Lincoln, Rhode Island, not later than June 30, 1966. Johnson gave appropriate notice of its intention to both local unions on April 26, 1966[1] and discussions were held among representatives of Johnson and said local unions concerning seniority and other questions pertinent to the consolidation of said Uxbridge and Pawtucket operations. Such discussions resulted in an informal pre-transfer agreement to "dovetail" at the Lincoln terminal the seniority lists of the terminals to be closed. In these discussions Johnson took a neutral position, leaving the determination of the issue of seniority to the representatives of Local 251 and Local 170, and agreeing to abide by their decision. After the closing of said Uxbridge terminal, Local 170 ceased to be the bargaining agent of said former Uxbridge terminal employees and as employees at the Lincoln terminal they became members of Local 251. Pursuant to the understanding reached by Local 251 and Local 170, John Blackburn, business agent of Local 251, posted at said Lincoln terminal, in October, 1966, a seniority list which "dovetailed" all the employees who transferred from the closed terminals to said Lincoln terminal. It is clear that the employees from both of said terminals transferred to Lincoln at substantially the same time. This "dovetailed" list placed Armand D'Orsi, the most senior employee of Johnson, who had been employed at the Pawtucket terminal since July 15, 1946 in the fifteenth position thereon with all of the first fourteen positions being given to former Uxbridge terminal employees.

Promptly after the posting of said list, the former Pawtucket employees filed a formal grievance with Blackburn, the business agent of Local 251, alleging that they were Johnson's original employees in Rhode Island and were thus entitled to have seniority for lay-off purposes. They demanded arbitration of their grievance in accordance with the provisions of said New England Freight Agreement to which Johnson, Local 251 and Local 170 were parties. Said agreement in Article 7, Section 1 provided for the creation of a Joint Local Committee which would have jurisdiction "over disputes and grievances involving Local Unions or complaints by Local Unions participating in said Committee."

On January 18, 1967, said issue of seniority for lay-off purposes was presented to said Joint Local Committee for determination. Present at that hearing were Blackburn, Armand D'Orsi, said former employee at said Pawtucket terminal, and Alfred Robichaud, business agent of Local 170, which formerly represented said Uxbridge employees. Since Local 170 no longer represented said former

1. Sent by registered mail, the notice read: "This letter will serve as official notice that our trucking operations in Uxbridge and Pawtucket will be combined not later than June 30, 1966 at our new location in Lincoln, Rhode Island."

Uxbridge employees, he was not permitted to participate in said hearing. No former Uxbridge employee was notified of the time and place of said hearing and none was present thereat. At the conclusion thereof said Joint Local Committee declined to pass upon the merits of said grievance and referred it "to the Joint Area Committee for interpretation of Article V, Section 2(b)2" of said collective bargaining agreement

Article 8, Section 1(c) of said agreement provides as follows:

"(c) It is agreed that all matters pertaining to the interpretation of any provisions of this Agreement may be referred by the Area Secretary for the Union or the Area Secretary for the Employers at the request of either the Employers or the Union, parties to the issue, with notice to the other Secretary, to the Joint Area Committee at any time for final decision."

Article 5, Section 2(g) of said agreement provides:

"(g) Disputes Procedure.

If a dispute arises concerning the interpretation or application of the foregoing provisions dealing with seniority, then the subject matter of such dispute may be taken up by the aggrieved Party with the Joint Area Committee provided for herein."

On March 1, 1967, Johnson, and Local 251 executed and filed with the Joint Area Committee a submission of said dispute over the interpretation of said Article V. In said submission they agreed "that the decision of the Joint Area Committee in the above dispute shall be final, conclusive and binding, as provided by Article 8 of said New England Freight Agreement." On the same day the Joint Area Committee held its hearing on said submission.

Although there is no transcript of the testimony which was presented at said hearing, the evidence adduced during the trial before me establishes that D'Orsi testified in support of his contention that said "dovetailed" seniority list, prepared by Blackburn, was invalid and contrary to the provisions of said New England Freight Agreement in that it deprived him and the other original Johnson employees at the Pawtucket terminal of their seniority rights as to lay-offs. Similarly, the evidence establishes that Blackburn took a contrary position and testified in support of said "dovetailed" list, stating that he prepared it and that in his opinion it was correct and proper under his interpretation of the provisions of said agreement. No former Uxbridge terminal employee was present during said hearing and it is clear that no formal notification of the time and place of said hearing was given to any of them.

At the conclusion of said hearing said Joint Area Committee rendered the following decision:

"The decision of the Board is that the men transferred from the Uxbridge terminal in local 170 area are to be placed at the bottom of the seniority list following the original Johnson men transferred from Pawtucket in accordance with Article 5, Section 2 of the contract. This shall become effective starting March 5, 1967. There shall be no claim for lost work opportunity during the period from June 29th to March 5th."

Subsequent to the rendition of said decision certain of the plaintiffs requested Blackburn to take action to have said decision vacated. The evidence establishes that he sought to do so but that there was no procedure provided by said agreement for such action by him. Additionally, the evidence establishes that some of the plaintiffs applied for relief from said decision to certain officers of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and were advised by them that the decision of said Joint Area Committee was final. The instant action was thereafter instituted by the plaintiffs.

After a careful consideration of all of the evidence and the reasonable infer-

ences to be drawn from it, I find and conclude that the plaintiffs have failed completely to produce any evidence of bad faith, fraud or discrimination on the part of Local 251 or its business agent, Blackburn. I am satisfied that the latter acted honestly and in good faith toward the plaintiffs and properly presented their contention to said Joint Area Committee. Similarly I find there is no credible evidence whatever of any collusion between Local 251 and Johnson to deprive the plaintiffs of their alleged seniority rights as claimed by the plaintiffs.

Among other provisions relating to seniority included in Section 2 of Article V of said collective bargaining agreement is the following:

"(e) Acquisition of Purchase.

When one company acquires or purchases control of the business of another company, including control by an I.C.C. order, then the employees of the company so acquired or purchased shall be placed at the bottom of the acquiring or purchasing company's seniority roster in the order of their payroll or company seniority with the former company."

Plaintiffs ask this Court to vacate said decision of the Joint Area Committee and to adopt a different interpretation of the provisions of said Article V, Section 2. In my opinion this Court should not undertake to make any such interpretation. In United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, at pages 596 and 598–599, 80 S.Ct. 1358, at pages 1360 and 1361–1362, 4 L.Ed.2d 1424 (1960), the Supreme Court held:

"The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards. As we stat-

ed in United Steelworkers of America v. Warrior & Gulf Navigation Co., [363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409] ante, p. 574, decided this day, the arbitrators under these collective agreements are indispensable agencies in a continuous collective bargaining process. They sit to settle disputes at the plant level—disputes that require for their solution knowledge of the custom and practices of a particular factory or of a particular industry as reflected in particular agreements."

\* \* \* \* \* \*

"The collective bargaining agreement could have provided that if any of the employees were wrongfuly discharged, the remedy would be reinstatement and back pay up to the date they were returned to work. Respondent's major argument seems to be that by applying correct principles of law to the interpretation of the collective bargaining agreement it can be determined that the agreement did not so provide, and that therefore the arbitrator's decision was not based upon the contract. The acceptance of this view would require courts, even under the standard arbitration clause, to review the merits of every construction of the contract. This plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final. This underlines the fundamental error which we have alluded to in United Steelworkers of America v. American Manufacturing Co., [363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403] ante, p. 564, decided this day. As we there emphasized, the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for, and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."

Similarly the Supreme Court has held an Area Committee decision interpreting the provisions of a collective bargaining agreement to be final and binding where the parties have designated its decision as their "chosen instrument for the definitive settlement of grievances" and that it is not open to the courts to reweigh the merits of the grievance. General Drivers, etc., Union No. 89 v. Riss & Co., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed. 2d 918 (1962). See also Fuller v. Highway Truck Drivers and Helpers Local 107, 428 F.2d 503 (3 Cir. 1970); Bieski v. Eastern Automobile Forwarding Co., 396 F.2d 32 (3 Cir. 1968).

■ But it is equally well settled that an employee may seek relief in the federal courts under 29 U.S.C. § 185(a) in order to vindicate his individual rights under a collective bargaining agreement if he establishes that his union did not perform its duty toward him fairly, honestly and without discrimination. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); Fuller v. Highway Truck Drivers and Helpers Local 107, supra; Miller v. Spector Freight Systems, Inc., 366 F.2d 92 (1 Cir. 1966).

■ As hereinbefore recited, I am convinced that Local 251 performed its duty of representation of the plaintiffs as members thereof fairly, honestly and without discrimination toward them. Under the circumstances the failure of Local 251 to give notice to the plaintiffs of the hearing before said Joint Area Committee does not invalidate the decision of said Joint Area Committee. Ramsey v. N. L. R. B., 327 F.2d 784 (7 Cir. 1964).

In my opinion the plaintiffs have failed to establish that they are entitled to the relief which they seek in this action. Accordingly, judgment will be entered in favor of each of the defendants with costs.