Per Curiam.

We are in accord with the disposition of the Appellate Division in modifying the order of Special Term.
This appeal, the facts of which have been sufficiently set forth in the opinions below, results from a motion to compel the arbi *456 tration of three grievances. Arbitration has been ordered as to one, and denied as to the others.
Whether the grievance at the Mansfield, Ohio, plant actually concerns rehiring or discharge is properly a matter to be decided by the arbitrator. Furthermore, the company is not prejudiced by the inartful manner in which the complaint was originally drawn, since it clearly understood the thrust of the problem.
As to the delay in seeking a court order for arbitration, allegedly amounting to an abandonment of the claim in this case involving a collective bargaining agreement, that question should be argued in the forum which the parties have voluntarily chosen—arbitration (see Matter of Straight Line Foundry & Mach. Corp. [Wojcik], 9 N Y 2d 867; Matter of Novelty Fabrics Corp. [Lawrence J. Fink, Inc.], 2 N Y 2d 894; Steelworkers v. American Mfg. Co., 363 U. S. 564; Steelworkers v. Warrior & Gulf Co., 363 U. S. 574; Steelworkers v. Enterprise Corp., 363 U. S. 593). Nothing herein, however, is to be construed as changing decisions in the usual arbitration cases, such as Matter of Zimmerman v. Cohen (236 N. Y. 15).
We think that the grievance arising at the East Pittsburgh plant, involving the 11 time value allowance ’ ’, was not covered by the provisions of the collective bargaining agreement which provided for arbitration. “ [Sjince arbitration is a creature of contract, a court must always inquire, when a party seeks to invoke its aid to force a reluctant party to the arbitration table, whether the parties have agreed to arbitrate the particular dispute ” (Steelworkers v. American Mfg. Co., supra, pp. 570-571). The parties here having agreed that no arbitrator should have authorization to “ Establish or modify ” time values, it is clear that such problems had, by agreement, been taken out of the arbitration process outlined in the contract. To submit such a grievance to arbitration now would be an idle gesture, as no valid award could be made. Nowhere in the collective bargaining agreement is there a statement which could be construed to mean that there has been an agreement for “ therapeutic ” arbitration, incapable of enforcement.
Not only is the character of the time values which may have been set in the original agreement to be determined here (see Radio Corp. of America v. Association of Professional Eng. Personnel, 291 F. 2d 105; International Union of Elec., Radio & *457 Mach. Workers v. Westinghouse Elec. Corp., 268 F. 2d 352), but in addition how much, if at all, pre-existing changes in procedures could be incorporated into management’s change of the time values. This must, necessarily, encompass an equitable modification of existing values, which is beyond the range of the authority granted to the arbitrator by the parties (see Underwood Corp. v. Local 267, Int. Union of Elec., Radio & Mach. Workers, 183 F. Supp. 205; Sunnyvale Westinghouse Salaried Employees Assn. v. Westinghouse Elec. Corp., 175 F. Supp. 685).
Finally, the grievance at the Baltimore plant, involving the definition of the bargaining units, seems to us under Federal law to be within the exclusive jurisdiction of the National Labor Relations Board, which has the expertise to make clear the precise nature of the bargaining units certified by it. This view has recently been reaffirmed by the United States Supreme Court in the following language (Marine Engineers v. Interlake Co., 370 U. S. 173,181,185):
“ A centralized adjudicatory process is also essential in working out a consistent approach to the status of the many separate unions which may represent interrelated occupations in a single industry. Moreover, as the national agency charged with the administration of federal labor law, the Board should be free in the first instance to consider the whole spectrum of possible approaches to the question, ranging from a broad definition of ‘ labor organization ’ in terms of an entire union to a narrow case-by-case consideration of the issue. Only the Board can knowledgeably weigh the effect of either choice upon the certainty and predictability of labor management relations, or assess the importance of simple administrative convenience in this area.
* * *
“ The need for protecting the exclusivity of NLRB jurisdiction is obviously greatest when the precise issue brought before a court is in the process of litigation through procedures originating in the Board. While the Board’s decision is not the last word, it must assuredly be the first. In addition, when the Board has actually undertaken to decide an issue, relitigation in a state court creates more than theoretical danger of actual conflict between state and federal regulation of the same controversy. ’ ’
*458 The First Circuit appears to have reached the same conclusion, in reversing the District Court, in Local No. 1505, Int. Bro. Elec. Workers v. Local Lodge No. 1836 of Dist. 38,1 AM (304 F. 2d 365). (See, also, International Chem. Workers Union v. Olin Mathieson Chem. Corp., 202 F. Supp. 363.)
The order appealed from should be affirmed, without costs.