335 F.2d 198
 DESERT COCA COLA BOTTLING COMPANY et al., Appellants,
v.
GENERAL SALES DRIVERS, DELIVERY DRIVERS AND HELPERS LOCAL
14, Affiliated with the International Brotherhood of
Teamsters, Chauffeurs, Warehousemen and Helpers of America,
an unincorporated association, Appellee.
 No. 19128.
 United States Court of Appeals Ninth Circuit.
 July 23, 1964.
 
 Morton Galane, Las Vegas, Nev., for appellants.
 George Rudiak, Las Vegas, Nev., for appellee.
 Before BARNES, Circuit Judge, MADDEN, Judge of the Court of Claims, and BROWNING, Circuit Judge.
 BARNES, Circuit Judge.
 
 
 1
 This is an appeal from a judgment of the United States District Court for the District of Nevada. The appellants, a group of employers comprising the soft drink bottling industry in their area, brought a suit for a declaratory judgment against the appellee, a labor union with which the appellants had a collective bargaining agreement. The appellants' suit sought a determination by the district court that a certain controversy which had arisen between the appellants and the union was, under the provisions of the collective bargaining agreement, required to be resolved by arbitration, and was not, as the union contended and still contends, a dispute of the kind which the agreement said should not be included within the scope of the arbitration provision of the agreement.
 
 
 2
 The district court had jurisdiction of the case under Section 301 of the Labor Management Relations Act of 1947 (the Taft-Hartley Act)8 29 U.S.C. 185, and the Federal Declaratory Judgment Act, 28 U.S.C. 2201. The court, after a trial, construed the arbitration provision of the parties' labor agreement as excluding the pending dispute from arbitration. It therefore rendered judgment against the appellants, denying them the declaratory relief which they sought. It also held that the union's contention in the pending dispute was well founded.
 
 
 3
 The dispute between the parties is that the appellee union claims that a certain classification of employees known as driver-salesmen are entitled to overtime compensation for work in excess of 40 hours per week, and the appellant employers claim that they are not so entitled. The primary problem for the district court, and for us on this appeal, is not the resolution of this dispute. The appellants' suit for declaratory judgment did not ask the court to determine and declare whether or not the driver-salesmen were entitled to overtime. They asked the court only to determine a question preliminary to that, i.e., the question of whether the parties had, in the collective bargaining agreement, provided that the decision of whethr or not the driver-salesmen should be paid overtime should be made by the arbitrators who, according to the agreement, would decide most of the kinds of disputes which might arise between the parties.
 
 
 4
 The parties to a labor agreement can, by an arbitration provision in the agreement, in effect oust the courts of jurisdiction to hear and decide a dispute which would, but for the arbitration provision, be a case of alleged breach of contract by one of the parties cognizable in a court if the aggrieved party should resort to a court. The preliminary question of whether or not the parties have, by the arbitration provision of their agreement, conferred the deciding power with regard to any particular dispute upon the arbitrator, rather than leaving that question open for enforcement by strike or lockout action, or by a suit in court, is a question for a court if one of the parties chooses to resort to a court,[1] unless the arbitration provision is so inclusive as to require that even such a question must be submitted to arbitration.
 
 
 5
 The problem, then, for the district court was and the problem for us is to determine whether the parties had agreed to arbitrate a dispute, if a dispute should arise between them, as to whether driver-salesmen should be paid overtime pay if they worked more than 40 hours per week.
 
 
 6
 The contract between the parties, first made in 1950, and amended from time to time with regard to hourly wage rates of the various classifications of employees and other details, was last amended and made effective, as amended, from March 1, 1962, to March 1, 1965. The instant dispute arose while this version of the agreement was in effect. The arbitration provision of the contract said the following:
 
 
 7
 'All grievances must be filed in writing by the Union within forty-five (45) days after the matter in dispute or disagreement is alleged to have occurred. Complaints not filed within this time limit shall be rendered invalid and not subject to the grievance and arbitration machinery herein established.
 
 
 8
 '(a) Employees shall select one arbitrator and the Employer shall select one arbitrator.
 
 
 9
 '(b) Said two arbitrators shall select a third arbitrator, who shall be chairman of the Board of Arbitration.
 
 
 10
 '(c) In the event the parties fail to agree on a person to act as the impartial arbitrator, they shall jointly request the Federal Mediation and Conciliation Service to supply a panel of five (5) names of persons qualified to hear and decide the case. Upon receipt, each of the parties shall alternately strike a name until four names have been eliminated. The fifth or remaining person shall be the impartial arbitrator.
 
 
 11
 '(d) The decision of the arbitrator or a majority of said Board of Arbitration, upon any issue concerning the terms of this Agreement shall be final, binding and conclusive upon all parties concerned.
 
 
 12
 '(e) Pending such decision, there shall be no cessation or stoppage of work because of such controversy, dispute or disagreement.
 
 
 13
 '(f) Any expense jointly incurred, as a result of arbitration, shall be borne one-half by the Employer and one-half by the Union.
 
 
 14
 'It is understood that the above shall not apply in any way concerning wages.'
 
 
 15
 The foregoing would seem, down to the last sentence, to be a conventional, broad and inclusive arbitration provision. Paragraph (d) would quite clearly make the instant dispute arbitrable, unless the last sentence of the entire arbitration provision quoted above is applicable to the current dispute and removes it from the generality of paragraph (d). What we have said indicates our view that that last sentence, 'It is understood that the above shall not apply in any way concerning wages,' is of crucial importance to the determination of whether the parties had agreed to arbitrate disputes of the type of the current dispute.
 
 
 16
 Where shall one look for evidence as to whether or not the parties intended to so agree? If the language of the entire arbitration provision, including the last sentence, were perfectly clear and could bear only one meaning, we would look no further, and adopt that plain meaning. But it is a common experience to find that language which, read in isolation, seems to have only one possible meaning was, in its context in a larger writing and in the circumstances in which it was written, intended to mean something quite different.
 
 
 17
 In the instant case the union points to the last sentence of the arbitration provision and says that it plainly removes from arbitration the dispute as to whether driver-salesmen should receive overtime pay, since the dispute is a dispute 'concerning wages.'
 
 
 18
 The employers urge that a court must approach the question which is before us with a strong presumption that when a labor agreement contains an arbitration provision, that provision is intended to have the most inclusive coverage that its language, interpreted in the light of all circumstances relevant to its meaning, will bear.
 
 
 19
 The guidelines for the federal courts in these arbitration cases were set out by the Supreme Court in a trilogy of cases decided in 1960. United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 403; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. The Supreme Court in the Warrior case said:
 
 
 20
 'The Congress, however, has by 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under 301 must be strictly confined to the question whether the reluctant party did agree to arbittrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.
 
 
 21
 '* * * In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad.' (363 U.S. at 582-585, 80 S.Ct. at 1353-1354.)
 
 
 22
 The district court broadly interpreted the word 'wages' as commensurate with 'compensation,' quoting 92 C.J.S. p. 1035. But the word 'wages' can also be given a narrower definition, commensurate only with 'wage scale.' Although hours, overtime, and vacations all can affect one's income for tax purposes, the word 'wages' in the contract might well only have been intended to mean the general wage scale. Here the arbitration clause, paragraph (d), was broad, and the exclusion clause, on its face, uncertain, if not vague. Can we say the issue here presented clearly 'concerns wages' any more than the total number of hours to be worked each day or week 'concerns wages,' and would hence be beyond arbitration?
 
 
 23
 By the contract, time and a half is payable after eight hours work in one day or after forty hours work in one week. Suppose the employer claimed those hours worked after Sunday midnight should apply on the next week's total hours, rather than those of the preceding week. If the former, the second week might well go into overtime, and the first not. Or the opposite might be true. Or neither week might get into overtime by an allocation of such hours of employment to one week or another. If the employee disputed the week to which such hours could be credited, the resolution of such differences might well result in a different total compensation for the two-week period. To the extent it changes the total compensation, it 'concerns' compensation, yet the amount of wages paid per hour-- the general wage scale-- is not involved.
 
 
 24
 In other words, can a dispute affect compensation without affecting wages? We think it can fairly and honestly be thought that it can. We cannot hold that the term is 'clear and unambiguous',[2] or say 'with positive assurance that the arbitration clause is not suspecptible of an interpretation that covers the asserted dispute.'
 
 
 25
 The union cites several cases[3] which it contends support its position here. However, in all of these except the Sunnyvale opinions, the exclusion of the controversy from arbitration was substantially more clear and less ambiguous than the exclusion here. The second circuit pointed out,[4] after distinguishing the Communication Workers and Underwood cases on the distinction which we here use, that the authority of the two Sunnyvale opinions is considerably weakened by Radio Corporation of America v. Association of Professional Eng'r Personnel, 3 Cir. 1961, 291 F.2d 105, cert. den. 368 U.S. 898, 82 S.Ct. 174, 7 L.Ed.2d 93. The Sunnyvale opinions are also weakened by the fact that both were decided prior to the decisions in the Supreme Court trilogy, noted above.
 
 
 26
 We conclude the district court was in error in not holding that whether the driver-salesmen are entitled to overtime pay is an issue subject to arbitration, and we reverse and remand.
 
 
 27
 Our holding does not result in an expeditious handling of this dispute, which the district court may well have (or may well have not) already correctly decided. This we regret. Yet we are required by the mandate of the United States Supreme Court in the three 1960 cases to follow a certain path. In the Warrior case, supra, the Supreme Court instructed: 'Doubts should be resolved in favor of coverage,' i.e., of arbitration (363 U.S. at 583, 80 S.Ct. at 1353), and:
 
 
 28
 'Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the courts should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator.
 
 
 29
 'The judiciary sits in these cases to bring into operation an arbitral process * * * It is a question for the arbiter, not for the courts.' (363 U.S. at 585, 80 S.Ct. at 1354)
 
 
 30
 In so ruling, we concur with and follow the previous opinion of this court rendered in Operating Engineers Local No. 3 v. Crook Bros. Tractor Co., 1961, 295 F.2d 282, where at page 283 it was said:
 
 
 31
 'Whether 'qualifications' is to include such matters as insubordination or is to be confined to such matters as skill, experience and physical condition is, at best, a debatable question. The intention to exclude from arbitration the dispute here involved does not, we are satisfied, appear from the face of the contract with the clarity which is essential.'
 
 
 32
 Reversed and remanded for further proceedings.
 
 
 33
 MADDEN, Judge (dissenting).
 
 
 34
 The court is right, of course, in concluding that it is obliged, under the binding precedents, to lean strongly in the direction of arbitration. But I think the court has leaned farther than the Supreme Court's impulsion a tergo requires it to do. I think the union, when it insisted upon the addition to the conventional language of the contract of the sentence:
 
 
 35
 'It is understood that the above shall not apply in any way concerning wages.,'
 
 
 36
 meant that, so far as the wages which an employee should draw at the end of the week, such a question should be determined on a strictly legalistic basis, and not in the discretionary or mediatory fashion in which an arbitrator is free to act. The words 'in any way' concerning wages ought to be pointed enough to include a dispute as to whether an employee's pay envelope should, or should not, include some dollars for the overtime which he worked. If the question were whether one, under the contract, is entitled to straight time or to time and a half for overtime, that would, the court indicates, be a 'wages' question, since it relates to the 'general wage scale.' The instant question whether he gets nothing, or something, for overtime work seems to me to relate to the wage scale.
 
 
 37
 The District Court took the view which I take on the arbitrability question. It decided that it had jurisdiction to decide the dispute on the merits of the overtime pay question, and it decided that question. That action, if this court had allowed it to stand, would have wound up a lengthy and costly litigation. I think there should be a considerable tendency, in an appellate court, to lean in the direction of sustaining such a beneficent result, rather than requiring the parties to thresh again the same old straw before another type of moderator.
 
 
 
 [1]
 John Wiley & Sons, Inc. v. Livingston, 1964, 376 U.S. 543, 546, 84 S.Ct. 909, 11 L.Ed.2d 871; United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409; Pacific Northwest Bell Tel. Co. v. Communications Workers of America, 9 Cir. 1962, 310 F.2d 244, 248
 
 
 [2]
 The 'clear and unambiguous' test is the second circuit's verbalization of the test laid down by the Supreme Court. Carey v. General Electric Vo., 1963, 2 Cir., 315 F.2d 499, 506, cert. den. 84 S.Ct. 1162 (April 20, 1964)
 
 
 [3]
 Communications Workers of America v. New York Tel. Co., S.D.N.Y., 1962, 209 F.Supp. 389, affirmed, 2 Cir. 1964, 327 F.2d 94; Underwood Corp. v. Local 267 Int. Union of E.R. & M. Workers, D.Conn., 1960, 183 F.Supp. 205; Carey v. Westinghouse Electric Corp., 1962, 11 N.Y.2d 452, 230 N.Y.S.2d 703, 184 N.E.2d 298, reversed on other grounds 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320; Gould Storage Battery Corp. v. United E., R. & M. Workers, 1938, 137 N.J.L. 522, 61 A.2d 50; Sunnyvale Westinghouse Salaried Employees Assn. v. Westinghouse Electric Corp., W.D.Pa., 1959, 175 F.Supp. 685, affirmed 3 Cir. 1960, 276 F.2d 927
 
 
 [4]
 Carey v. General Electric Co., 2 Cir., 1963, 315 F.2d 499, 506 n. 4, cert. den. 84 S.Ct. 1162 (April 20, 1964)