**LOUISIANA–PACIFIC CORPORATION,**
**Plaintiff-Appellant,**

**v.**

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, LOCAL UNION 2294, Association of Western Pulp and Paper Workers, and Association of Western Pulp and Paper Workers, Local Union No. 49, Defendants-Appellees.**

**Nos. 77–2414, 77–3841.**

United States Court of Appeals,
Ninth Circuit.

July 3, 1979.

Joseph A. Darrell, of Thelen, Marrin, Johnson & Bridges, San Francisco, Cal.,

Louis B. Livingston, of Miller, Anderson, Nash, Yerke & Wiener, Portland, Or., for plaintiff-appellant.

William F. Ferroggiaro, Jr., Eureka, Cal., Don S. Willner, of Willner, Bennett, Riggs & Skarstad, Portland, Or., for defendants-appellees.

Before WALLACE and SNEED, Circuit Judges, and BLUMENFELD,* District Judge.

BLUMENFELD, District Judge:

The appellant Louisiana-Pacific Corporation (The Company) is subject to two arbitration awards under two separate collective bargaining agreements which have obligated it to pay in a jurisdictional dispute two different sets of employees for the work of one. The Company brought suits in the Northern District of California to set aside these awards and to obtain tripartite arbitration of the jurisdictional dispute over a work assignment. The unions each filed cross-petitions for confirmation of their respective awards. On cross-motions for summary judgment, the District Court dismissed the complaints of the Company and, respectively, entered judgments confirming each of the arbitration awards. We affirm.

## I.

The Company operates a pulp and paper mill in Samoa, California. At all times pertinent to this case, it was party to separate agreements, arrived at after collective bargaining, with, respectively, the Association of Western Pulp and Paper Workers and its agent Local Union No. 49 (Pulp Workers), appellees, and the appellee International Brotherhood of Electrical Workers, Local Union 2293 (IBEW). Each of the two unions represent different employees in separate bargaining units at the Company.

In July 1975, the Company assigned work for the disassembly and reassembly of the generator portion of a turbine-generator at the Samoa mill to maintenance electricians represented by IBEW. The Pulp Workers believed that under its collective bargaining agreement, the work should have been assigned to personnel in its bargaining unit and filed a grievance.[1] The parties failed to resolve the dispute through the grievance procedure, and, pursuant to the collective bargaining agreement, the Pulp Workers processed the unresolved grievance to arbitration. It was heard by Arbitrator John Kagel in April 1976, and decided by him in September 1976, by directing payment to the Pulp Workers' members for 535 hours of lost work.[2] Its personnel having completed the work in dispute, IBEW did not

---

* Hon. M. Joseph Blumenfeld, Senior United States District Judge for the District of Connecticut, sitting by designation.

1. The Pulp Workers relied on section 2 and Local Rule No. 12 embodied in its collective bargaining agreement with the Company. Section 2 provided, in pertinent part:

    SECTION 2—RECOGNITION
    "Company recognizes the Signatory Union as the sole collective bargaining agent for all hourly employees of Company employed in the mill covered by this Agreement, excluding those engaged in the following: Recovery steam power group, maintenance electricians, administration, actual supervision, watchman duties, sales, engineering and drafting, research and technical occupations requiring professional training, accounting, clerical, stenographic and other office work. Neither Company nor any supervisor or foreman shall have any private understanding or agreement with any individual employee, or

group of employees, in conflict with this Agreement. . . ."
Local Rule No. 12 provided:
    "12. *Work Practices and Procedures.*
    "The Company agrees to continue the maintenance work practices and procedures as they exist."

2. The decision of Arbitrator Kagel provides:
    "The tear down and reassembly of the generator portion of the machine in question was work within the jurisdiction of the Union. The Company shall forthwith pay an amount equivalent to the number of hours that such work took. The Company is forthwith ordered to reconstruct the amount of time that such work took from Company records and to equally distribute such pay to the Millwright Crew then in the employ of the Company. The amounts due and the identification of those to receive it are remanded to the

participate in this arbitration. Thereafter, on November 30, 1976, the Company filed suit against both unions in the Northern District of California to vacate the Kagel award and to obtain an order requiring the Pulp Workers and IBEW to participate in tripartite arbitration. The Pulp Workers filed a cross-petition for confirmation of the award. On cross-motions for summary judgment, the District Court, in March 1977, confirmed the Kagel award and denied the claim for tripartite arbitration.[3] The Company appeals from that decision in No. 77–2414.

After the Kagel award was issued, IBEW, believing that this would impair its right under its collective bargaining agreement to that kind of work in the future, filed a grievance.[4] The Company denied the grievance at its final stage, and IBEW processed it to arbitration before Arbitrator Gerald Marcus. At this point, and for the

first time, the Company attempted to take the position of a neutral party in a dispute involving the interests of two separate sets of employees. It invited the Pulp Workers to participate in this second arbitration proceeding and to be bound by it despite the previous award.[5] The Pulp Workers did not respond. In June 1977, Arbitrator Marcus decided the dispute between IBEW and the Company in the union's favor, deciding that the work, which had already been completed, had been correctly assigned to IBEW personnel under its collective bargaining agreement.[6] The Company thereupon filed another suit against both unions in the Northern District of California. This suit sought to vacate the Marcus award and, again, to obtain an order for the Pulp Workers and IBEW to participate in tripartite arbitration. IBEW filed a cross-petition for confirmation of the award. On

Parties, the Arbitrator retaining jurisdiction in the event that any dispute develops concerning these matters."

3. The order of Judge Schnacke provides in pertinent part as follows:
   "1. The arbitration award of John Kagel of September 13, 1976 being Grievance No. 42–75 between Louisiana-Pacific Corporation and Local 49 of the Association of Western Pulp and Paper Workers is hereby confirmed.
   "2. Plaintiff's complaint is dismissed with prejudice."

4. The text of the formal grievance filed by IBEW on October 9, 1976 reads as follows:
   "Company is in violation of Section 2 Para 2 I.B.E.W. contract by arbitration awarding of maintence [sic] to A.W.P.P.W. Union on G.E. generator power & recovery.
   "Union position is that the G.E. generator is under the jurisdiction of I.B.E.W. bargaining unit, and should have never been awarded to A.W.P.P.W."
   Section 2 of the IBEW agreement with the Company provides, in pertinent part:
   "SECTION 2—RECOGNITION
   "Company recognizes Union as the sole collective bargaining agent of all maintenance electricians, recovery steam power group employees, including those in the powerhouse and those in the recovery area at its Samoa Paper Division, but excluding all other employees, guards and supervisors as defined in the National Labor Relations Act.
   "Company recognizes that qualified bargaining unit employees shall have precedence over all repair, replacement and relocation of all existing electrical equipment and opera-

tion of Recovery and Power Boiler departments. Company shall assign work on the above basis during the term of this current working Agreement."

5. The following is the text of the Company's letter to the unions inviting tripartite arbitration:
   "Grievance No. 4–76, filed by Local Union No. 2294, I.B.E.W., is scheduled for arbitration on April 25, 1977, at 9:00 A.M., at the Samoa Womens Club. The arbitrator will be Mr. Gerald D. Marcus.
   "This letter is to propose that the A.W.P. P.W. and its Local Union No. 49 participate in and be bound by this arbitration. We make this proposal in the hope that the jurisdictional dispute can be resolved in such a proceeding, notwithstanding the A.W.P.P. W.'s prior arbitration award and the court proceeding related to it.
   "Please inform in writing (1) whether the A.W.P.P.W. will participate in and be bound by the I.B.E.W. arbitration, if the I.B.E.W. agrees to such a proposal, and (2) whether the I.B.E.W. will agree to the proposal."

6. The award of Arbitrator Marcus provides:
   "The Arbitrator hereby determines that the IBEW is entitled under its Collective Bargaining Agreement with the Company to perform the work of repair and replacement of a certain GE generator and the valve assembly on the related turbine including the work of removal of the housing for the equipment and related disassembly work and the grievance is hereby sustained."

cross-motions for summary judgment, Judge Schnacke confirmed the Marcus award and denied the Company's renewed claim for tripartite arbitration.[7] The Company appeals from that decision in No. 77–3841. The two appeals have been consolidated.

## II.

The desirability of achieving tripartite arbitration in jurisdictional disputes over work assignments has repeatedly been emphasized. *Transportation-Communication Employees Union v. Union Pacific Railroad Co.*, 385 U.S. 157, 161, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966); *Local 416, Sheet Metal Workers v. Helgesteel Corp.*, 507 F.2d 1053, 1057–58 (7th Cir. 1974); *Columbia Broadcasting System, Inc. v. American Recording and Broadcasting Association*, 414 F.2d 1326, 1329 (2d Cir. 1969). However, the question of whether that objective can be achieved at the cost of overturning arbitrators' bipartite awards after they have been arrived at under each of the existing collective bargaining agreements does not appear to have been addressed previously by the federal courts.

The policy favoring arbitration of labor-management disputes under a collective bargaining agreement as the preferred method for the achievement of industrial peace was authoritatively and emphatically established in the so-called *Steelworkers Trilogy.*[8]

"[T]he grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement.

"Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement. The grievance procedure is, in other words, a part of the continuous collective bargaining process. It, rather than a strike, is the terminal point of a disagreement.

"The labor arbitrator performs functions which are not normal to the court; the considerations which help him fashion judgments may indeed be foreign to the competence of courts.

'A proper conception of the arbitrator's function is basic. He is not a public tribunal imposed upon the parties by superior authority which the parties are obliged to accept. He has no general charter to administer justice for a community which transcends the parties. He is rather part of a system of self-government created by and confined to the parties. . . .' "

*United Steelworkers v. Warrior & Gulf Navigation Co., supra,* 363 U.S. at 581, 80 S.Ct. at 1352 (citation omitted). *See also,* Section 203(d) of the Labor Management Relations Act, 1947, 61 Stat. 154, 29 U.S.C. § 173(d).[9]

---

**7.** Judge Schnacke's order in the Marcus arbitration case provides, in pertinent part, as follows:

"1. Plaintiff's complaint is dismissed with prejudice.

"2. The arbitration award of Gerald D. Marcus of June 10, 1977 being Grievance No. 4–76 between Louisiana-Pacific Corporation and International Brotherhood of Electrical Workers, AFL–CIO, Local Union 2294 is hereby confirmed."

**8.** *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

**9.** Title 29 U.S.C. § 173(d) provides in pertinent part:

"Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or inter-

The Supreme Court has emphasized that " 'The underlying objective of the national labor laws is to promote collective bargaining agreements and to help give substance to such agreements through the arbitration process.' " *Carey v. Westinghouse Electric Corp.,* 375 U.S. 261, 265, 84 S.Ct. 401, 405, 11 L.Ed.2d 320 (1964), quoting Judge Fuld, below, in dissent, 11 N.Y.2d 452, 458, 230 N.Y.S.2d 703, 706, 184 N.E.2d 298, 300 (1962).

There is no suggestion here of fraud or bias on the part of either Arbitrator Kagel or Arbitrator Marcus, *see Holodnak v. Avco Corp., Avco-Lycoming Division,* 381 F.Supp. 191 (D.Conn.1974), *mdf'd on other grounds,* 514 F.2d 285 (2d Cir.), *cert. denied,* 423 U.S. 892, 96 S.Ct. 188, 46 L.Ed.2d 123 (1975), or that they went beyond the provisions of each of the respective collective bargaining agreements, *see, City Electric, Inc. v. Local Union 77, IBEW,* 517 F.2d 616, 619 (9th Cir.), *cert. denied,* 423 U.S. 894, 96 S.Ct. 194, 46 L.Ed.2d 127 (1975); *Torrington Co. v. Metal Products Workers Union,* 362 F.2d 677 (2d Cir. 1966). Neither is it argued that either arbitrator acted improperly or made the wrong decision based upon the two agreements which, respectively, were before each of them; nor should either of these arbitrators have been governed by provisions in the other's agreement.

"[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence

from the collective bargaining agreement."

*United Steelworkers v. Enterprise Wheel & Car Corp., supra,* 363 U.S. at 597, 80 S.Ct. at 1361. *See also, Holly Sugar Corp. v. Distillery, Rectifying, Wine & Allied Workers,* 412 F.2d 899, 902–03 (9th Cir. 1969); *Riverboat Casino, Inc. v. Local Joint Executive Board,* 578 F.2d 250 (9th Cir. 1978).

### III.

Despite the unchallenged fidelity of each of these arbitrators to the agreements which had been drafted by the Company and each of the unions, the Company now attacks the awards because of their apparent inconsistency. This, it is argued, should be a basis for ignoring firm federal policy on the finality of a labor arbitrator's decision.[10]

The Company asserts that national labor policy as announced by the Supreme Court in *Transportation-Communication Employees Union v. Union Pacific Railroad Co., supra,* 385 U.S. 157, 87 S.Ct. 369 (*Transportation Union*), requires the vacation of the two bipartite awards here and the ordering of tripartite arbitration.

In *Transportation Union,* a case that arose under the Railway Labor Act, 45 U.S.C. §§ 151–163, the employer had installed electronic data processing equipment which created new jobs that had not been contemplated when the existing collective bargaining agreements were established. Two unions, one representing the telegraphers, the other the clerks, in separate bargaining units with the company, each

---

pretation of an existing collective-bargaining agreement."

**10.** It is clear that judicial deference to an arbitrator's decision in a labor case is stronger than under arbitration obtained in the ordinary commercial context. In discussing this point the Supreme Court has said:

"Thus the run of arbitration cases, illustrated by *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168, becomes irrelevant to our problem. There the choice is between the adjudication of cases or controversies in courts with established procedures or even special statutory safeguards on the one hand and the settlement of them in the more infor-

mal arbitration tribunal on the other. In the commercial case, arbitration is the substitute for litigation. Here arbitration is the substitute for industrial strife. Since arbitration of labor disputes has quite different functions from arbitration under an ordinary commercial agreement, the hostility evinced by courts toward arbitration of commercial agreements has no place here. For arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself."

*Steelworkers v. Warrior & Gulf Co., supra,* 363 U.S. at 578, 80 S.Ct. at 1351. *See also,* Gorman, *Labor Law* 599–600 (1976).

claimed the new jobs for members in their respective units. The employer assigned the new work to members of the clerks' union. The telegraphers' union protested this assignment under its collective bargaining agreement, processed its grievance and referred its claim to the Railway Adjustment Board, the statutorily established final arbiter for disputes covered by the Railway Labor Act. *See* 45 U.S.C. § 153. The clerks' union refused to become a party to that arbitration, and neither the employer or the telegraphers' union attempted to compel the clerks' participation. The Board considered only the telegraphers' collective bargaining agreement and decided that the work should have been assigned to the telegraphers. When that union petitioned a federal district court for enforcement of the Board's award, the court refused and dismissed the case because of the absence of an indispensable party, the clerks' union. The Supreme Court affirmed the dismissal and ordered the case remanded to the Board for tripartite arbitration.

The analogy between *Transportation Union* and the case at bar which appellant seeks to draw is not strong enough to outweigh the facts that in *Transportation Union* the arbitrator derived its power from an act of Congress and was fulfilling a governmental obligation in the exercise of that power. Although the Supreme Court expressed a view favoring tripartite arbitration in work assignment disputes, the Court was careful to point out that it had previously held that a statute gave the Railroad Adjustment Board exclusive jurisdiction to hear and determine work assignment disputes. *Id.,* 385 U.S. at 164, 87 S.Ct. 369. Relying heavily on that portion of the Railway Labor Act which provides that the Board itself shall give notice of a hearing " 'to the . . . employees . . . *involved* in any disputes . . .' [45 U.S.C. § 153, First (j)]" *id.* (emphasis supplied), and stressing the fact that the "clerks' union . . . is 'involved,' " *id.,* the Court held that the refusal of one union to participate in an arbitration proceeding involving the other contestant in a work assignment dispute was not only unjusti-

fied, but resulted in the Board's failure to comply with its enabling statute, providing for " 'the *prompt* and *orderly* settlement of *all* disputes . . .,' . . . § 2(5). (Emphasis supplied.)" *Id.* at 162, 164, 87 S.Ct. at 373. Thus the Court held that the bipartite award should be vacated, because "[t]he Adjustment Board . . . can, with its experience and common sense, handle this entire dispute in a satisfactory manner in a single proceeding." *Id.* at 165, 87 S.Ct. at 373.

The statutory power and authority of the Railroad Adjustment Board under the Railway Labor Act has no application to the parties here. It would appear that the kind of expansive purview given to the Railroad Adjustment Board remains beyond what the Supreme Court has ruled as being within the limited competence of the labor arbitrator whose authority arises out of a collective bargaining agreement. *See United Steelworkers v. Enterprise Wheel & Car Corp., supra,* 363 U.S. at 597, 80 S.Ct. 1358.

The rights of the parties here to arbitration, *inter se,* depend not upon a statute, but upon the obligations created by the agreements between the Company and, respectively, each of the unions. And, no contention is made that either of the agreements involved in this case contain any provision relating to tripartite arbitration of work assignment disputes.

### IV.

Instead this case presents an example of a failure at the time of assenting to the collective bargaining agreement or at the time of the first emergence of this jurisdictional dispute to anticipate and to take steps to avoid this recurring problem in industrial relations which was identified, but not resolved, in *Carey v. Westinghouse Electric Corp., supra,* 375 U.S. 261, 84 S.Ct. 401.

In *Carey,* the International Union of Electrical, Radio & Machine Workers (IUE) and another union known as the Federation entered into agreements with Westinghouse wherein IUE represented all production and

maintenance employees and the Federation represented all salaried technical employees. IUE charged that Westinghouse has assigned work which properly belonged to employees in its bargaining unit to employees in the unit represented by the Federation. The New York Court of Appeals affirmed a lower court's refusal to order arbitration between IUE and Westinghouse on the ground that the Taft-Hartley Act preempted the issue for the National Labor Relations Board to the exclusion of arbitration. The Supreme Court reversed. In the course of its opinion, the Court expressly noted that only one union would be arbitrating and "[s]o, unless the other union intervenes, an adjudication of the arbiter might not put an end to the dispute." *Id.* at 265, 84 S.Ct. at 406. Stressing that holding of the Court's majority, Mr. Justice Black, joined by Mr. Justice Clark, dissented on the ground that arbitration could not bring about a final resolution of the jurisdictional dispute between the two unions, since one of them, the Federation, would not be a party to the arbitration proceeding. In an opinion concurring with the majority, Mr. Justice Harlan took note of the risk of inconsistent awards by two arbitrators:

> "Lacking a clear-cut command in the statute itself, the choice in substance lies between a course which would altogether preclude any attempt at resolving disputes of this kind by arbitration, and one which at worst will expose those concerned to the hazard of duplicative proceedings. The undesirable consequences of the first alternative are inevitable, those of the second conjectural. As between the two, I think the Court at this early stage of experience in this area rightly chooses the latter."

11. Although agreements for tripartite arbitrations might present some complications, those would not seem to be insurmountable. *See* Jones, *Autobiography of a Decision: The Function of Innovation in Labor Arbitration, and the National Steel Orders of Joinder and Interpleader*, 10 U.C.L.A.L.Rev. 987 (1963); Comment, *Nudging and Shoving All Parties to a Jurisdictional Dispute into Arbitration: The Dubious Procedure of National Steel*, 78 Harv. L.Rev. 784 (1965).

*Id.* at 273, 84 S.Ct. at 409. The advisability of legal planning to protect an employer from the consequences which the appellant complains of here was suggested in a Note on the decision in *Carey*:

> "An employer can presumably protect himself from the ruling in *Carey* by contracting with each union for trilateral arbitration in the case of jurisdictional disputes giving rise to a demand for arbitration."

*The Supreme Court, 1963 Term*, 78 Harv.L. Rev. 143, 285 (1964).[11]

Indeed in an industry where these disputes arise with considerable frequency and where prompt and uniform resolution is a matter of considerable economic importance, the Building and Construction Trades Department of the AFL–CIO and ten employers' associations have established a Plan for Settlement of Jurisdictional Disputes in the Construction Industry in a national contract, which is commonly incorporated by reference in local collective bargaining agreements. *Acmat Corp. v. International Union of Operating Engineers*, 442 F.Supp. 772, 774 n.1 (D.Conn.1977). *See also, Sheet Metal Workers, Local Union # 49 v. Los Alamos Constructors, Inc.*, 550 F.2d 1258, 1262–64 (10th Cir. 1977); *Bechtel Corp. v. Local 215, Laborers' International Union*, 544 F.2d 1207, 1213–14 (3d Cir. 1976); *Local 416, Sheet Metal Workers v. Helgesteel Corp., supra*, 507 F.2d at 1055–56. *See generally*, Note, *Work-Assignment Disputes Under the National Labor Relations Act*, 73 Harv.L.Rev. 1150 (1960).

In addition to a contractual solution to this problem, the Company had the opportunity under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a),[12]

12. Title 29 U.S.C. § 185(a) provides:
> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

to require both unions to participate in an initial tripartite arbitration proceeding by seeking an order to do so from a federal court. Although we have not had occasion to pass on the issue and do not do so now, the Second Circuit Court of Appeals, in a thoroughly reasoned opinion, has held that, before bipartite arbitration has begun under either union's agreement, an employer can obtain an order for tripartite arbitration with unions which both claim the same work. *Columbia Broadcasting System, Inc. v. American Recording and Broadcasting Association, supra,* 414 F.2d at 1329. *See also, Bell Aerospace Co. Division of Textron v. Local 516, UAW,* 500 F.2d 921, 922 (2d Cir. 1974); *Window Glass Cutters League v. American St. Gobain Corp.,* 428 F.2d 353, 355 (3d Cir. 1970) (dicta). Here the Company's failure to seek that relief before allowing the Pulp Workers' grievance to reach arbitration now prevents it from claiming any injustice in the determination that "the [Company's] agreement with the nonassigned union obligates the [Company] to pay . . . for idleness." *Transportation Union, supra,* 385 U.S. at 162, 87 S.Ct. at 372.

At several stages the Company made choices as to collective bargaining and litigation strategies. It must now abide the consequences of those choices. The orders of the District Court are affirmed.