OPINION OF THE COURT
Joseph S. Levine, J.
The defendant Kidder Peabody & Co., Incorporated (Kidder Peabody) moves for an order pursuant to the Federal Arbitration Act (9 USC § 1 et seq.) and CPLR 7501 et seq. compelling arbitration of the dispute which is the subject of this case. The plaintiff opposes the motion, arguing that she is not bound by *91 the provision in the security account agreement providing for arbitration of all disputes because she did not sign or even see -the agreement prior to investing a substantial amount of money with Kidder Peabody. The issue before the court is under what circumstances may a nonsignatory to a contract be bound to its terms, specifically, a clause calling for arbitration of all disputes.
The plaintiff commenced this lawsuit on or about March 17, 1987 by the service of a summons and verified complaint on Kidder Peabody. The other defendant, Asher Yadlin, apparently was not provided with a copy of the answer, if any, but has a copy of the demand for a verified bill of particulars, the plaintiffs verified bill of particulars, and the transcript of the plaintiffs deposition conducted on June 29, 1987.
There has been a recent surge of litigation concerning the enforceability of arbitration agreements. In the case at bar, the plaintiff was a 55-year-old first-time investor, who has lived in this country since 1979. She had met the unserved defendant, Mr. Yadlin, in Israel while they were both involved in political activity. Yadlin had apparently achieved some measure of political and financial status in Israel because the plaintiff testified that he was in a position to be named to a seat on the country’s equivalent of the Federal Reserve Board.
Yadlin was never chosen for the position in Israel. In fact, he was discovered to have been a miscreant and convicted for official misconduct, including fraud, and sent to prison for a term of five years, three years of which were actually served. These events took place in Israel commencing in 1976. Following his release from prison Yadlin met the plaintiff in New York in 1983. Yadlin allegedly told the plaintiff that he was employed by Kidder Peabody managing investments for individuals. Indeed, the plaintiff visited Kidder Peabody offices before she agreed to accept Yadlin’s offer to invest her money. She was shown a desk purportedly belonging to Yadlin and equipped with all the accouterments one would expect of a stockbroker. During the course of their business dealings, the plaintiff would frequently call the office and leave messages for Yadlin. The plaintiff testified at her deposition that these messages were accepted by a receptionist named "Anna”.
Yadlin opened a securities account with Kidder Peabody, a requirement of which was that he sign a securities account agreement (Agreement), containing a standard arbitration clause. Plaintiff never was a party to the Agreement and had *92 no knowledge of its existence. Plaintiff agreed to have Yadlin invest her money by pooling her money with an equivalent amount of Yadlin’s money and then splitting the profits and losses they made collectively between them. It was the plaintiff’s understanding that Yadlin regularly implemented this type of investing system with other investors. Plaintiff asserts that she requested that her name be placed on the investment account along with Yadlin’s name but that Yadlin never complied with her request. Plaintiff was able to withdraw some money from such account by virtue of presigned checks which Yadlin had given her. In April 1985, plaintiff began to suspect that Yadlin was misappropriating funds from the account and demanded an accounting from Yadlin, which she never received from him.
Plaintiff formally settled this dispute twice through settlement agreements with Yadlin and his attorney but twice he defaulted on these settlement agreements. Plaintiff now brings an action against Yadlin and his alleged employer, Kidder Peabody, for (1) an accounting, (2) breach of contract, (3) actual fraud, (4) constructive fraud and (5) negligence. Kidder Peabody contends that if plaintiff was a customer of Kidder Peabody, she must submit to arbitration as pursuant to the Agreement. Kidder Peabody has failed to affirmatively state whether Yadlin was employed by it or what was the exact nature of their relationship.
As promulgated in the Federal Arbitration Act (9 USC § 1 et seq.) Congress declared a national policy favoring arbitration and withdrew the power of States to require a judicial forum for the resolution of claims that contracting parties had agreed to resolve by arbitration.
Section 2 of the Act provides, in relevant part: "A written provision in * * * a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract * * * or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract”.
The preferred position of arbitration as an alternate means of dispute resolution is well illustrated by cases holding that the Federal Arbitration Act was enacted pursuant to the Commerce Clause of the Constitution and is a body of substan *93 tive law enforceable in both State and Federal courts. (Moses H. Cone Mem. Hosp. v Mercury Constr. Corp., 460 US 1 [1983].) Under the Supremacy Clause of the Constitution, the Federal Arbitration Act preempts any contrary provision of State law. (Southland Corp. v Keating, 465 US 1 [1984].)
However, none of the above cases militate against the court’s responsibility to find an agreement in the first instance. The courts must always inquire when a party seeks to invoke its aid to force a reluctant party to arbitrate the particular dispute. (See, Matter of County of Rockland [Primiano Constr. Co.], 51 NY2d 1 [1980]; Matter of Carey v Westinghouse Elec. Corp., 11 NY2d 452 [1962]; Rose v Merrill Lynch, Pierce, Fenner & Smith, 57 AD2d 553 [2d Dept 1977].) It is a question of fact to be resolved by the courts whether there was a valid agreement to arbitrate. (Matter of Allstate Ins. Co. v Feldman, 65 AD2d 571 [2d Dept 1978].)
Whether a party has agreed to arbitrate is determined on the basis of ordinary contract principles. A valid arbitration provision must be in writing but a party may be bound to arbitrate without being a signatory to the contract. Indeed, the law in New York does not even require the writing containing the arbitration provision to be signed. (CPLR 7501; General Obligations Law § 5-701.) Aside from estoppel, standard principles of contract interpretation and agency define the conditions under which a nonsignatory may be bound to the terms of a contract. On this context, the key to the analysis is whether the facts and circumstances surrounding the formation and execution of the contract demonstrate that there was mutual assent to arbitrate. The intent of the parties must be clear to render arbitration the exclusive remedy. Parties are not to be led into arbitration through subtlety. (See, Matter of Riverdale Fabrics Corp. [Tillinghast-Stiles Co.], 306 NY 288 [1954].)
The facts before the court do not sustain Kidder Peabody’s burden of proving mutual assent to arbitrate this dispute. It is uncontroverted that the plaintiff did not even see the securities account agreement containing the arbitration provision let alone agree to its terms. Kidder Peabody’s argument is best summarized in its attorney’s argument that, "in attempting to bootstrap herself into the position of a 'customer,’ however, Mrs. Ben-Reuven has also inherited the obligations of a 'customer’ in this particular account, including the obligation to arbitrate pursuant to the written agreement between Kidder Peabody and the 'customer’ [i.e., Yadlin] in this ac *94 count.” This novel theory of contract by inheritance finds no support in law. Third-party beneficiaries to a contract and principals bound by their agents are not valid analogies where, as here, fraud is the essence of the dispute and that the alleged fraud goes to the very heart of the facts surrounding the circumstances as to how the plaintiff was induced by Yadlin to give him substantial amounts of money. Clearly, the focus of the case is fraud, on behalf of Yadlin for wrongfully taking money and on behalf of Kidder Peabody for allegedly cloaking Yadlin with the apparent authority of an employee. These issues will be resolved in a judicial forum only because the moving party failed to show there was mutual assent to arbitration in its stead.
The motion is denied for the reasons stated above.